## In re YORK SILK MFG. CO.

(District Court, M. D. Pennsylvania.   July 8, 1911.)

### No. 1,719.

1. **BANKRUPTCY (§ 353\*)—DISTRIBUTION—ALLOWANCE OF CLAIMS—STATUTES.**
   Distribution of the bankrupt's estate is controlled by the provisions of the act of Congress, and its interpretation is ultimately a matter for federal determination.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 541–544; . Dec. Dig. § 353.\*]

2. **BANKRUPTCY (§ 346\*)—CLAIMS AGAINST ESTATE—TAXES—BONUS.**
   A bonus exacted by a state from a corporation for the privilege of increasing its capital stock is not a tax entitled as such to priority under Bankr. Act July 1, 1898, c. 541, § 64 (a), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447), but a debt based on a contractual relationship, provable and entitled to a pro rata distribution with general creditors.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.\*]

3. **BANKRUPTCY (§ 346\*)—ALLOWANCE OF CLAIMS—PRIORITIES—CLAIMS OF COMMONWEALTH—TAX ON VALUE OF CORPORATE LOANS.**
   The obligation of a Pennsylvania corporation, through its treasurer, to collect from the Pennsylvania holders of its obligations a tax of four mills by deducting it from the interest due them, is not a tax on the corporation, and an account settled therefore by the state officers is not entitled to a priority in the distribution under the bankrupt law.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.\*]

4. **BANKRUPTCY (§ 346\*)—CLAIMS—PRIORITIES—DEBTS OWING THE COMMONWEALTH—"PENALTY"—"TAX."**
   Penalties imposed on a corporation for failure to return increase of capital stock, file reports, etc.. are not taxes within the meaning of any law, and are not entitled to priority under the bankruptcy act, and under Bankr. Act July 1, 1898, c. 541, § 57 (j), 30 Stat. 560 (U. S. Comp. St. 1901. p. 3443), cannot be allowed except for the amount of the pecuniary loss

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sustained by the act or transaction out of which the penalty arose. A penalty is a fine or punishment or forfeiture, and does not become an obligation until imposed by lawful authority, and the penalties so imposed on the corporation are different from penalties for nonpayment of taxes, the latter being exacted in lieu of interest, while those on the corporation are by way of punishment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.*

For other definitions, see Words and Phrases, vol. 6, pp. 5272–5276; vol. 8, pp. 7750, 6867–6886, 7813.]

5. BANKRUPTCY (§ 191*)—CLAIMS BY COMMONWEALTH—LIENS.

Claims of the commonwealth founded on settlements by state officials of Pennsylvania, made under Act March 30, 1811 (5 Smith's Laws, p. 228), and April 16, 1827 (Laws 1826–27, p. 471), against a bankrupt corporation after the adjudication in bankruptcy, were too late to acquire liens on the bankrupt property; the statutes of the state relating to such settlements providing that they shall be a lien from the date of the settlement.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286–295; Dec. Dig. § 191.*]

In the matter of the York Silk Manufacturing Company, bankrupt. Heard on exceptions to report of referee disallowing claims of the Commonwealth. Order affirmed.

The following is the referee's report:

### Claims of Commonwealth.

On October 20, 1910, the Auditor General filed a claim for $18,806.67. The proof is made up as follows:

(1) Bonus on increase of capital stock, August 1st, 1903, ⅓ of
    1 per cent. on $3,200.00............................... $10,666.67
    Settled and entered by Auditor General and approved by
    State Treasurer October 19, 1910. Interest claimed from
    June 25, 1904, at rate of 6 per cent. per annum.

(2) Penalty for neglect to file a sworn return of actual in-
    crease of capital stock from $1,800,000 to $5,000,000....    5,000.00
    Settled and entered by Auditor General and approved by
    State Treasurer, October 18, 1910. Interest claimed
    from November 18, 1910, at rate of 6 per cent. per an-
    num.

(3) Tax of 4 mills as estimated and appraised value of cor-
    porate loans.......................................    2,400.00
    Penalty for failure to make report, 10 per cent..........      240.00
    Settled and entered by Auditor General and approved by
    State Treasurer October 18, 1910. Interest claimed at
    rate of 12% per annum from December 18, 1910.

(4) Penalty for failure to file capital stock reports for the
    years 1903, 1904, 1905, 1906, 1907, 1908, and 1909.......      500.00
    Settled and entered by Auditor General and approved by
    Treasurer October 19, 1910. Interest claimed from No-
    vember 19, 1910, at rate of 6 per cent. per annum. At-
    torney's commissions of 5 per cent. are claimed. Cer-
    tificates of settlements covering the above were filed as
    liens in York, Berks, and Cumberland counties, Pa.m
    and writs of scire facias issued thereon on or about Oc-
    tober 20th, 1910.

### Statement of Facts.

(1) On September 6, 1910, the York Silk Manufacturing Company was adjudged a bankrupt by the District Court of the United States for the Middle District of Pennsylvania.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(2) The bankrupt corporation was incorporated in Pennsylvania August 21, 1900, with authorized capital of $200,000, for the purpose of manufacturing silk and textile fabrics. The authorized capital was increased February 2, 1902, to $1,800,000, which was actually issued and the bonus paid.

(3) On August 23, 1903, a further increase was authorized to $5,000,000. No return of the actual increase of $3,200,000 was made, nor was the bonus on it paid. The actual increase appears to have been made May 31, 1904; the corporation engaged in the business for which it was incorporated having mills in York, Berks, and Cumberland counties, in the state of Pennsylvania, and Middlesex county, in the state of Connecticut.

(4) On September 23, 1910, George E. Neff, Esq., was elected trustee in bankruptcy, and thereafter entered upon the discharge of his duties as such.

(5) On October 7, 1910, the trustee filed a petition asking for an order to sell at private sale to A. D. Walker, Richard L. Austin, James Crosby Brown, the real estate of the bankrupt and certain personal property.

(6) On October 21, 1910, the referee granted an order authorizing the trustee to sell at private sale all the real estate of the bankrupt to the parties named for the sum of $276,000 freed and discharged from all mortgages, judgment liens, or incumbrances whatsoever, and certain personal property of the bankrupt for the sum of $15,000, freed and discharged from all liens and incumbrances whatsoever. This order was afterwards ratified and affirmed by the order of Hon. R. W. Archbald, district judge of said court.

(7) On September 1, 1908, a mortgage for $750,000 to secure a bond issue for like amount was entered of record against all the real estate of the bankrupt. Under this mortgage bonds to the amount of $682,500 were issued.

(8) The trustee, in addition to the said items of $276,000 and $15,000, received the following sums of money: Cash in bank, $7,752.65; cash, $54.57; rent, $2,694.13; rent, $208.33; rent, $1,250. The account of the trustee showed receipts for $303,059.68, and the balance on his account is $288,144.10.

(9) The trustee paid the borough, county, school, and building taxes on the Fleetwood Mill, situate in Berks county, the high school, tuition, and school taxes on the Middletown mill, water rents at Middletown mill, and other real estate taxes due.

(10) The bondholders will receive about 35 or 40 per cent. on their bonds in the distribution.

## Conclusions of Law.

(1) The commonwealth claims priority out of the real estate and personal estate of the bankrupt for all the items embraced in the claim. The state's contention to priority appears to be based upon three grounds: (1) That the said bonus, corporate loans, and penalties are taxes within the purview of the bankruptcy act; (2) that the fiscal officers of the commonwealth having proceeded in accordance with the provisions of the Pennsylvania acts of March 30, 1811 (5 Smith's Laws, p. 228) and April 16, 1827 (Laws 1826–27, p. 471), liens were acquired prior to the sale of the property of the bankrupt; and (3) that according to sections 31 and 32 of the Pennsylvania act of June 1, 1889 (P. L. 420), relating to taxes, it is entitled to a preference in this distribution.

Section 64 (a) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) provides as follows: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors and upon filing the receipts of the proper public officers of such payment, he shall be credited with the amount thereof, and in case any question as to the amount or legality of any such tax, the same shall be heard and determined by the court."

The first and most important question is whether the bonus claimed here is a tax within the meaning of the federal or state statutes.

The bankrupt act of 1867 (Act March 2, 1867, c. 176, § 28, 14 Stat. 531), inter alia, gave priority to "all debts due to the state, in which the proceedings in bankruptcy are pending and all taxes and assessments made under the laws of such state."

The present act of 1898 is quite different. Section 64 relating to priority claims omits "all debts due the state," as well as "assessments." It is nar-

188 F.—47

rowed down so far as the state is concerned to "all taxes legally due and owing by the bankrupt."

It is urged that the case of State of New Jersey v. Anderson, 17 Am. Bankr. Rep. 63, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, is directly applicable to the facts of this case. There the tax in question was an annual license fee or franchise tax required by the statute of New Jersey to be paid by corporations upon their outstanding capital stock for the privilege of the existence and continued right to exercise their franchise. This is the same as our capital stock tax which has invariably been allowed priority in this court. The bankrupt, however, is excepted from the payment of this tax by the Pennsylvania statute, because it is a manufacturing corporation.

[1] This distribution is controlled by the provisions of the acts of Congress relating to bankruptcy, and the interpretation of a federal statute is ultimately a matter for federal determination.

In the case of the State of New Jersey v. Anderson, 17 Am. Bankr. Rep. 63, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, defines a tax as follows: "Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government. We think this exaction is of that character. It is required to be paid by the corporation after organization in invitum. The amount is fixed by the statute, to be paid on the outstanding capital stock of the corporation each year and capable of being enforced by action against the will of the taxpayer."

The bonus here is not a tax on capital stock as in the above case. It is a sum exacted by the state for the privilege of increasing its capital stock. It is not a tax, but a debt based upon a contractual relationship. Elements of a tax are that it be levied annually and required to be paid in invitum. A bonus imports a consideration.

In Commonwealth v. Erie & Western Transportation Co., 107 Pa. 112, the Supreme Court of this state held that a bonus was not a tax. Also see Commonwealth v. Bessemer, 207 Pa. 302, 56 Atl. 871; Commonwealth v. Hoop Co., 226 Pa. 6, 74 Atl. 617. The superior court in Commonwealth v. Bailey, Banks & Biddle Co., 20 Pa. Super. Ct. 210, also held that a bonus is not a tax.

[2] The same decision is reached in Balto. & Ohio R. R. v. Maryland, 21 Wall. 456, 22 L. Ed. 678. It will thus be seen that it is authoritatively held that a bonus is not a tax. I therefore am obliged to conclude that the claim of the commonwealth for bonus is not entitled to priority in this distribution, but is a provable debt against the bankrupt, entitled to a pro rata distribution with other general creditors.

The next question is whether the corporate loans are a tax within the meaning of the bankruptcy act or a state statute.

[3] The obligation of a Pennsylvania corporation through its treasurer to collect from the Pennsylvania holders of its obligations a tax of four mills by deducting it from the interest due them is not a tax on the corporation, and an account settled therefore by the state officers is not entitled to a priority in the distribution under the bankrupt law. In re Wyoming Valley Ice Co. (D. C.) 16 Am. Bankr. Rep. 594, 145 Fed. 267.

The Supreme Court of Pennsylvania in Commonwealth v. Railroad Co., 186 Pa. 246, 40 Atl. 492, has said, in regard to this obligation: "The tax is not in any sense or in any degree a tax on a corporation or its property, but on the individual citizen of the state who holds the bonds. The corporation is chargeable with it only as collector, and by reason of the default of the duty to collect." In Darlington v. Marshall Kennedy Milling Co., 56 Pittsb. Leg. J. 201, the court ordered payment of the taxes on corporate loans to be paid in advance of a mortgage under sections 31 and 32 of the act of June 1, 1889. The point, however, was not raised in that case, and the distribution was under an execution, and the provisions of the bankruptcy law were not involved. If we could conclude that the taxes due on the corporate loans were taxes within the meaning of the act of June 1, 1889, we reach a point of conflict between the state statute and the federal law in which the latter provides that the taxes to have priority must be "legally due and owing by the bankrupt," and it necessarily follows that the provisions of the federal statute must prevail over the state law.

The case of In re Wyoming Valley Ice Company (D. C.) 16 Am. Bankr. Rep. 594, 145 Fed. 267, is a ruling of Judge Archbald of this court, and is conclu-

sive upon the referee. It therefore follows that this tax on corporate loans is not entitled to priority in this distribution, but is allowable as a general claim in this state.

[4] Coming next is the question of penalties. It is perfectly manifest that they are not taxes within the meaning of any law. A penalty is a fine or punishment or forfeiture, and does not become an obligation until imposed by lawful authority. These penalties are quite different from penalties imposed for nonpayment of taxes. The latter are exacted in lieu of interest. The penalties under consideration are punishments for failure to perform certain acts, and the penalties were not imposed until after the adjudication in bankruptcy.

Section 57 (j) of the bankruptcy act provides as follows: "Debts owing to the United States, a state, a county, a district or a municipality as a penalty or forfeiture shall not be allowed except for the amount of the pecuniary loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law." It will thus be seen that under these circumstances penalties are not even provable in bankruptcy, and can only be allowed for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose with reasonble and actual cost occasioned thereby, and such interest as may have accrued thereon according to law. The penalties are in no sense a fixed liability absolutely owing at the time of the filing the petition in bankruptcy, which is a necessary requisite to a provable claim as provided by section 63 of the bankruptcy act. Also see In re Southern Steel Co. (D. C.) 25 Am. Bankr. Rep. 358, 183 Fed. 498. These penalties must therefore be disallowed entirely, but without prejudice to the state to make a claim as provided for in the above section.

[5] The State Treasurer and Auditor General proceeded under the acts of 1811 and 1827, and made settlements against the bankrupt October 18 and 19, 1910, which was after the adjudication in bankruptcy, and on the 20th of October, 1910, entered liens in York, Adams, and Berks counties, Pa., whereon scire facias were issued. This was too late to acquire liens on the bankrupt property. The date of cleavage is the date of adjudication.

It should be observed that an adjudication in bankruptcy acts is personam and in rem. The property of the bankrupt at once vests in the trustee subsequently to be appointed. The rights of all parties are fixed by the adjudication. An adjudication is in effect a caveat, attachment, and injunction. When in any settlement made agreeable to the Act of 1811 a balance is found to be due to the commonwealth, this balance, together with interest from the expiration of the three months after the date of the settlement, "shall be deemed and adjudged to be a lien from the date of settlement of such account upon all the real estate of the person or persons indebted and on his or their securities throughout this commonwealth." The date of the lien here mentioned is the date of settlement. It is manifest that a settlement made after an adjudication in bankruptcy creates no valid lien. In fact, under section 67 of the bankrupt act, liens obtained against a person who is insolvent at any time within four months of filing of the petition in bankruptcy are void. Even if the settlement had been made prior to the adjudication in bankruptcy, they would not be conclusive in this court under the case of the State of New Jersey v. Anderson, 17 Am. Bankr. Rep. 63, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284. Under the act of 1827, the transmission by the Auditor General to the prothonotaries of the respective counties of the certified copies of the balance due the commonwealth, and the entry of record of such copies in the office of the prothonotary, are necessary in order to maintain a lien of such balances as against other lien creditors of the debtor. William Wilson & Son v. Silversmith Co.'s Estate, 150 Pa. 285, 24 Atl. 636. From this it will be seen that the mortgage in this case would have priority over the settlements. In the case just cited the Supreme Court says: "Being still in force, therefore, we are obliged to hold that their provisions must be complied with in order to enforce the collection of the claims of the commonwealth, and when they are in hostility to the claims of lien creditors in the county where the delinquent debtor resides. We do not see how we could

hold otherwise, unless we are prepared to hold that the lien given to the commonwealth is a specific lien upon each item of personal property in question, so as to follow it in whatever hands it may be found." We could not possibly hold such a doctrine as it would affect all the business carried on by corporation and limited partnerships with such an extremely oppressive and onerous liability as to destroy it altogether. We have never held such a liability by way of lien as this, and it would be entirely hostile to the spirit of our laws and the free interchange of commodities among our citizens. In this case the executions had been issued and levies made on personal property.

In Gladden v. Chapman, 188 Pa. 586, 41 Atl. 735, it is again held that if the commonwealth does not file certified copies of the settlements in the prothonotary's office, as required by the act of 1827, it is postponed to other lien creditors. The acts of June 7, 1879 (P. L. 112), and June 1, 1889 (P. L. 420), are considered in this case.

In re Clark Coal & Coke Co. (D. C.) 22 Am. Bankr. Rep. 843, 173 Fed. 658, which was a distribution in bankruptcy proceedings, the claim of the state for capital stock tax was postponed to other liens. The referee there held that "the lien of the state for the taxes claimed is to be paid as of the dates of the entry in the prothonotary's office."

I therefore hold that the claim of the state cannot participate in the distribution of the real estate fund, and the same is accordingly awarded to the bondholders under the mortgage.

This leaves for consideration only the personal fund which is much less than the amount of the claims of the state. The act of April 14, 1905 (P. L. 166), under which the $500 penalty is claimed, provides that the penalty imposed shall be a lien from the date of settlement by the Auditor General and State Treasurer. The penalty of $5,000 is claimed under act Feb. 9, 1901 (P. L. 3) § 3. This "shall be collected on account settled by the Auditor General and State Treasurer." It will be seen that there can be no lien under these acts, except from the date of settlement, and, as settlement was made after the adjudication in bankruptcy, it was then too late to originate any lien against the assets of the bankrupt corporation. And as already stated penalties are not provable. Bankr. Act, § 57 (j).

Sections 31 and 32 of the Pennsylvania act of June 4, 1889 (P. L. 420), provided as follows: "That all taxes imposed by this act shall be a lien upon the franchise and property both real and personal. * * * Whenever the franchise and property of a corporation, company, association, joint-stock association or limited partnership shall be sold at judicial sale all taxes due the commonwealth shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or other claims which shall be entered of record or become a lien after the passage of this act. * * * Nor shall any judicial sale be valid or a distribution of the proceeds thereof be made until all taxes due the commonwealth have been fully paid into the State Treasury, and the certificate of the Auditor General, State Treasurer, and Attorney General to this effect, filed in the proper court with the proceedings * * * for sale." Section 31 refers to "all taxes imposed by this act." The act has no application to a bonus. In fact, section 33 expressly says "that nothing in this act contained shall be taken or construed to alter or repeal existing laws imposing taxes upon collateral inheritances or imposing any bonus," etc. Nor is a bonus a tax, as already stated. Referring to corporate loans, it is not a tax "legally due and owing by the bankrupt." Section 64 (a) of the bankruptcy act. In re Wyoming Valley Ice Co. (D. C.) 16 Am. Bankr. Rep. 594, 145 Fed. 267. It is not a tax on the corporation or its property, but on the individual citizen of the state who holds the bonds. Section 32 is not pertinent to proceedings under the bankruptcy act. In the last analysis in order that the state may obtain priority its claims must be for taxes legally due and owing by the bankrupt within the meaning of the bankruptcy act. The bonus and taxes on corporate loans are not taxes legally due and owing by the bankrupt.

The penalties claimed of $500 and $5,000 cannot be considered as taxes, under the act of 1889 or of the federal statute. The penalties are not even provable in bankruptcy.

It is therefore ordered as follows:

(1) All the claims of the commonwealth filed are denied participation in the distribution of the real estate fund.

(2) All the claims of the state are disallowed as priority claim against the personal estate.

(3) The claims for bonus, interest, and amount due on corporate loans, and interest. attorney's commissions, etc., are allowed as general claims against the bankrupt estate.

(4) The items relating to penalties of $500 and $5,000 are disallowed, but without prejudice to the state to present a claim under the provisions of section 57 (j) of the bankruptcy act.

Niles & Neff, for the bankrupt.

A. V. Bower, John F. Kell, and C. P. Miller, for the Commonwealth of Pennsylvania.

WITMER, District Judge. After hearing the argument of counsel, reading and considering the opinion filed by J. Edward Vandersloot, Esq., referee, the exceptions thereto and the record in this case, it is, upon consideration, adjudged and decreed that the findings of the referee in favor of the trustee and general creditors disallowing the claim of the commonwealth, as preferred, and in rejecting the claim for penalties, are in accordance with the law, and the referee's conclusions and order are affirmed.

The well-considered opinion of the learned referee is adopted as the opinion, conclusions, and order of the court.