## NOLTE et al. v. HUDSON NAV. CO.

(Circuit Court of Appeals, Second Circuit. July 27, 1925.)

No. 362.

1. Receivers ⚙163—Government held not entitled to priority in payment of transportation taxes collected by navigation company in hands of receiver; "debt;" "tax."

Government's claim against navigation company for transportation taxes collected by it, under Revenue Act Oct. 3, 1917, §§ 500-505, and Revenue Act 1918, §§ 500-504 (Comp. St. Ann. Supp. 1919, §§ 6309⅛a-6309⅛e), held an ordinary debt, and not a claim for taxes, entitling government to priority of payment in receivership proceedings, in view of Act 1917, art. 71, and Regulations of Commissioner of Internal Revenue; nor was Rev. St. § 3186 (Comp. St. § 5908), applicable to create lien in favor of government, "tax" meaning a pecuniary burden imposed for the support of the government, and "debt" meaning an obligation to pay or perform something that is due to another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt; Tax—Taxation.]

2. United States ⚙76—When insolvency exists, within meaning of statute, stated; "insolvent."

A person, to be "insolvent," within Rev. St. § 3466 (Comp. St. § 6372), requiring debts of an insolvent due United States to be satisfied first, must have made a voluntary assignment or have had his effects attached after absconding, concealing, or absenting himself, or must have committed an act of bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

3. Bankruptcy ⚙60—Navigation company, consenting to receivership, held not to have committed an "act of bankruptcy."

Where bill asking for appointment of receiver for navigation company alleged that its assets exceeded its liabilities by over $3,000,000, but that owing to financial conditions it could not presently convert its assets to necessary funds, held, company's consent to appointment of receiver was not an "act of bankruptcy," within Rev. St. § 3466 (Comp. St. § 6372); it being not in fact insolvent at the time, within Bankruptcy Act, § 1, cl. 15 (Comp. St. § 9585), and section 3a (4), as amended in 1903 (Comp. St. § 9587).

4. Internal revenue ⚙45—Government held not entitled to recover penalty for nonpayment of transportation taxes from navigation company collecting same.

In receivership proceedings of navigation company, government presenting claim for transportation taxes collected by company under Revenue Act Oct. 3, 1917, §§ 500-505, and Revenue Act 1918, §§ 500-504 (Comp. St. Ann. Supp. 1919, §§ 6309⅛a-6309⅛e), but not paid over to government, held not entitled to recover penalty for nonpayment provided for by Act 1918, § 502 (Comp. St. Ann. Supp. 1919, § 6309⅛c); that section being applicable only against taxpayer, and not to collecting company.

5. Receivers ⚙163—Government's right to interest on claim for transportation taxes against collecting carrier stated.

In receivership proceedings of navigation company, government presenting claim for transportation taxes collected by company, but not paid over to government, held entitled to recover interest on such claim, if estate proved sufficient to discharge all claims in full and then leave anything with which to pay interest.

6. Interest ⚙1—Rule as to recovery of interest in federal courts stated.

In federal courts, right to interest is not dependent on statute, where under principles of equity and justice it would be allowable.

Appeal from the District Court of the United States for the Southern District of New York.

Receivership proceedings by Charles H. Nolte against the Hudson Navigation Company, wherein the Farmers' Loan & Trust Company and the National Commercial Bank & Trust Company of Albany, both on leave granted, filed bills to foreclose mortgages, joining others as parties defendant, wherein Elizabeth M. Nolte and Frederick W. Nolte, executrix and executor under will of Charles H. Nolte, were substituted as parties plaintiff. From an order allowing the claim of the United States for transportation taxes collected by the Navigation Company, without penalties or priority, the Navigation Company and the United States both appeal. Affirmed in part, and remanded, with directions to modify.

Charles H. Nolte on February 16, 1921, filed in the District Court for the Southern District of New York a bill in which he asked that the Hudson Navigation Company be placed in the hands of receivers. The bill alleged that the corporation's assets aggregated more

than $7,500,000, and that its liabilities aggregated $4,250,000; and it was also alleged that, because of the extraordinary financial conditions then existing in the money market of the United States, the corporation was unable to meet the obligations as they matured. The company in its answer admitted the allegations of the bill and consented to the appointment of the receivers. Thereupon Middleton S. Borland and James A. Emerson were appointed receivers of the company and of all its property and assets.

On March 12, 1921, the Farmers' Loan & Trust Company, as trustee under a mortgage dated March 2, 1891, which is sometimes hereinafter referred. to as the 5 per cent. mortgage, and which was executed by the New Jersey Steamboat Company, filed, pursuant to leave granted, its bill in the District Court aforesaid to foreclose its mortgage. The bill was filed against the Hudson Navigation Company, the New Jersey Steamboat Company, the Union Trust Company of Albany, N. Y., trustee, National Commercial Bank & Trust Company, trustee, Middleton S. Borland and James A. Emerson, as receivers of Hudson Navigation Company, Charles H. Nolte, Albany River Front Company, Inc., and Equitable Trust Company of New York, trustee, as defendants.

The bill proceeded to show that the New Jersey Steamboat Company, on March 2, 1891, executed, acknowledged, and delivered to the said trustee its certain mortgage or deed of trust by which it conveyed and transferred to the said trustee all of the property, real, personal, or mixed, and wherever the same might be situated, that was at the date of the execution of said indenture owned or might thereafter be acquired by the said the New Jersey Steamboat Company, for the purposes connected with the purposes of said corporation. The bill also alleged that, subsequent to the execution of the mortgage aforesaid, $1,500,000 face value of the principal of the bonds described in said mortgage, and at the time of the commencement of this suit there were and still are, $1,392,900 face value of the principal of said bonds so certified and delivered, outstanding and existing obligations of the said mortgagor company and the successor company, hereinafter referred to, in the hands of bona fide purchasers for value, and entitled to the lien and security of said mortgage.

In 1905 the Hudson Navigation Company, hereinafter called the Navigation Company, became the owner of the New Jersey Steamboat Company, hereinafter called the Mortgagor Company, and of all its franchises and property. It is alleged that the two companies were duly merged. and the Navigation Company became the successor of the Mortgagor Company, and that it assumed and became liable to pay the debts and perform all the obligations of the said Mortgagor Company. It is alleged that the principal of all of the bonds hereinbefore stated as having been issued became due on March 1, 1921, and default thereon was made, not only as respects the principal, but the interest as well.

The foreclosure bill filed by the Farmers' Loan & Trust Company, hereinafter called the trustee, asked that the trustee be put in possession of the mortgaged property, or that a receiver or receivers be appointed of all the mortgaged property (except a certain cash fund received from the city of Albany), with authority to carry on the business of the Navigation Company and of the Mortgagor Company. Thereupon and on June 17, 1921, an order was entered whereby the receivership of Borland and Emerson over the property of the Navigation Company was specifically extended to the property covered by the mortgage hereinbefore mentioned, and it was provided that they should continue to be vested with all the powers conferred upon them in the original order of their appointment under date of April 16, 1921.

Thereafter, on October 27, 1921, upon the petition of the National Commercial Bank & Trust Company of Albany, as Trustee, successor trustee to Union Trust Company of Albany, under a mortgage of the Navigation Company, dated February 1, 1908, leave was granted to the Union Trust Company, as trustee, to file a bill to foreclose its mortgage. That bill was filed on November 1, 1921, against the Navigation Company, the receivers of that company, as well as Charles H. Nolte and one Sidney H. Koff. The bill alleged that the Union Trust Company, as trustee, had certified and delivered bonds of a face value of $2,403,000 to the Navigation Company, and that these bonds were outstanding and existing obligations of the Navigation Company in the hands of bona fide purchasers for value, except $250,000 face value, which had been retired by the last-named company.

The last-named bill also alleged the agreement of the Navigation Company to pay all taxes, interest, and assessments on the mortgage which became due on March 2, 1921, or the 5 per cent. mortgage, hereinbefore mentioned, and the failure of that company to

pay the taxes and the interest on the bonds so secured, and it declared the principal amount of the outstanding bonds due and payable on account of such defaults. It demanded a foreclosure and sale of the property mortgaged, and asked the appointment of a receiver of the property and assets of the Navigation Company.

On November 28, 1921, the District Court entered an order extending the receivership of Borland and Emerson to the property and assets of the Navigation Company covered by the 6 per cent. mortgage and the supplements thereto, and to the suit for the foreclosure of that mortgage. The trustees under each mortgage, the 5 per cent. mortgage and the 6 per cent. mortgage, both claim a mortgage lien upon all the property owned by the Navigation Company and now in the custody of the receiver. Each mortgage had been recorded. The 5 per cent. mortgage was recorded in the custom house at New York City on June 12, 1891. The 6 per cent. mortgage was recorded in the same custom house at New York and in that at Albany on February 24, 1908. The mortgage supplemental thereto of October 20, 1909, was recorded in the New York custom house on February 24, 1910, and that of July 10, 1913, was also recorded in the New York custom house on the same date.

At the time of the argument in this court no final decree had been entered in the two foreclosure suits, neither had one been entered in the creditors' suit. James A. Emerson, one of the original receivers of the Navigation Company, having died on January 21, 1922, the other receiver, Middleton S. Borland, was by an order filed on July 18, 1922, continued as receiver with all the powers and duties conferred and imposed upon the receivers by the various orders of the court.

In addition to the principal amount of the two issues of bonds, hereinbefore mentioned, claims were filed against the estate of the Navigation Company aggregating the sum of $800,000. The collector of internal revenue for the Southern district of New York filed with the receiver proofs of claim against the Navigation Company in the principal sums of $177,030.33 and of $3,979.81, respectively, together with certain penalties and interest for so-called transportation taxes under the United States Internal Revenue Acts.

The receiver petitioned the District Court for instructions concerning these transportation tax claims, and after hearing, the District Judge, on August 4, 1924, entered an order allowing the said claims against the estate in receivership in the principal amounts of $181,010.14, without penalties, and without priority over any other claims. From this order an appeal was taken to this court.

Geller, Rolston & Blanc, of New York City (Frederick Geller, Mansfield Ferry, and Alexander C. Neave, all of New York City, of counsel), for Farmers' Loan & Trust Co.

Graham, McMahon, Buell & Knox, of New York City (Edward Ward McMahon, of New York City, of counsel), for National Commercial Bank & Trust Co. of Albany.

Murray, Aldrich & Roberts, of New York City (William M. Evarts and Hugh L. M. Cole, both of New York City, of counsel), for Equitable Trust Co. of New York.

Reynolds, Richards & McCutcheon, of New York City (George H. Richards and John S. Chapman, Jr., both of New York City, of counsel), for receiver of Hudson Nav. Co.

Emory R. Buckner, U. S. Atty., of New York City (Sherwood E. Hall, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, MANTON and HAND, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is an appeal by the United States from an order entered in the District Court which denied the right of the government to any preference or priority of payment of the claims of United States for so-called transportation taxes alleged to be due from the Navigation Company, which is in the hands of a receiver. At the time the receiver brought this matter to the District Court for instructions, the claims of the United States totaled $264,666.79. This sum included $181,010.14, collected by the Navigation Company from August, 1918, to January, 1921, inclusive, on account of transportation taxes, the sum of $9,050.51 in penalties, and $74,606.14 in interest at 1 per cent. per month to October 1, 1923.

The United States claims that the District Court committed error in the following particulars: (1) In holding that the claims were entitled to allowance only as general claims. (2) In denying to the claims preference and priority of payment as against the claims of the general creditors and as against the claim of the Farmers' Loan & Trust Company, as trustee. (3) In holding that the claims do not constitute claims for taxes, and as such entitled to preference and priority of payment, but constitute merely ordinary debt

claims. (4) In holding that debts due the United States from the defendant in receivership are not entitled to preference and priority in payment over general claims, and that the provisions of section 3466 of the Revised Statutes are not applicable to the present equity receivership suit.

[1] The moneys in respect of which the United States claims priority were collected by the Navigation Company in the years 1918 to 1921, inclusive, under the provisions of title 5 of the Revenue Act of October 3, 1917 (40 Stat. 314) and of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, §§ 6309¹/₃a–6309¹/₃e). Those acts imposed a tax upon persons and property for their transportation from one point in the United States to another. The language of the act is: "That the taxes imposed * * * shall be paid by the person, corporation, partnership, or association paying for the services or facilities rendered." Section 501. It laid the duty of collecting the tax upon the carrier rendering the service, and made it the duty of the carrier to make monthly returns under oath, "and pay the taxes so collected and the taxes imposed * * * to the collector [of internal revenue] of the district in which the principal office or place of business is located." Section 503. And the act of 1918 declared that, "if the tax is not paid when due, there shall be added as part of the tax a penalty of 5 per centum, together with interest at the rate of 1 per centum for each full month, from the time when the tax became due." 40 Stat. 1103, § 502 (Comp. St. Ann. Supp. 1919, § 6309¹/₃c).

The acts of 1917 and 1918 are similar, in that each imposes the tax upon the passenger carried or the goods transported, and each alike makes the carrier a collecting agent for the United States of the taxes imposed upon the travelers or shippers for the services rendered. The language of the acts is that "* * * the taxes * * * shall be paid by the person * * * paying for the services or facilities rendered," and they also provide that the carrier shall "collect the amount of the tax * * * and pay the taxes so collected." And article 71 of the act of 1917 provided that, "where an agent of one carrier in collecting the amounts paid for seats, berths, or staterooms in parlor or sleeping cars or on vessels, acts on behalf of any or all of the several carriers who are to furnish the accommodations involved, such agent shall collect the taxes on the total charges as and when such charges are collected and remit to such other carriers the respective amounts, charges and taxes, collected on their behalf, and such other carriers shall return and pay such taxes." A similar provision is found in article 89 of Regulations 49 of Commissioner of Internal Revenue issued under the provisions of the act of 1918.

It seems to us too clear for argument that the acts of Congress involved herein impose a tax upon the person transported or upon the shipper of freight to be carried. The tax is not imposed on the carrier but on the person or thing carried. And it is equally clear that the carrier is made a collector of the tax, and the duty is laid upon it to pay the amount which is thus collected to the collector of internal revenue of the district in which the carrier has its principal office or place of business.

A tax is a pecuniary burden imposed for the support of government. The courts have said again and again that a tax is not a debt nor in the nature of a debt. It is not, as is a debt, founded on contract or agreement. It is an impost levied by authority of the government upon its citizens or subjects for the support of the state. The taxpayer is the one upon whom the pecuniary burden is imposed and whose duty it is to make payment. The burden of making payment here rests on the traveler or shipper. The duty of collecting it and then paying over the amount collected rests on the carrier it is true, but this does not make the carrier a taxpayer as distinguished from a tax collector.

In Graham v. Township of St. Joseph, 67 Mich. 652, 655, 35 N. W. 808, 810, the court said: "A tax is a portion of the property of the citizen required by the government for its support in the discharge of its various functions and duties, and may be imposed when either person or property is within its jurisdiction." But in the case now before the court "the portion of the property" exacted is not exacted from the property of the carrier. It is taken from the property of the person carried or whose property is carried. It cannot be a tax upon the carrier as it does not come out of its property. It ought not to be necessary to refer to any authorities to sustain so self-evident a proposition. But it has happened before that courts have been compelled to sit in judgment, if not upon just such a proposition, upon one analogous to it.

In United States v. Railroad Co., 17 Wall. 322, 21 L. Ed. 597, the Supreme Court had under consideration the Internal Revenue

Act of 1864. Section 122, as amended (14 Stat. 138), provided that railroads and certain other corporations "indebted for any money for which bonds * * * have been issued * * * upon which interest is stipulated to be paid * * * shall be subject to and pay a tax of 5 per centum on the amount of all such interest." The court, affirming the court below, held that this was not a tax upon the corporation, but upon the creditor. Mr. Justice Hunt, writing for the court, said:

"It is not taxation that government should take from one the profits and gains of another. That is taxation which compels one to pay for the support of the government from his own gains and of his own property. In the cases we are considering the corporation parts not with a farthing of its own property. Whatever sum it pays to the government is the property of another. * * * The corporation is neither richer nor poorer. Whatever it thus pays to the government, it by law withholds from the creditor. * * * It is no pecuniary burden upon the corporation. * * * The burden falls on the creditor. He is the party taxed."

And it was said that "The corporation is made use of as a convenient and effective instrument for collecting the same." In this case there was a dissent by Justices Clifford and Miller, but it was not in relation to the question above discussed. See, also, Case of the State Freight Tax, 15 Wall. 232, 21 L. Ed. 146; Jackson v. Northern Central Railway, 7 Wall. 262, 19 L. Ed. 88; Haight v. Railroad Co., 6 Wall. 15, 18 L. Ed. 818.

The courts hold in such cases that the tax is not imposed on the corporation, but on the bondholders, and that upon the bankruptcy of the corporation the amount due from it on account of taxes so imposed and collected by it is not a tax due from the bankrupt, and so entitled to priority of payment under the Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656), but is a liability payable like any ordinary indebtedness. In re Wyoming Valley Ice Co. (D. C.) 145 F. 267; In re York Silk Mfg. Co. (D. C.) 188 F. 735, 738, 740. And see In re William A. Harris Steam Engine Co. (D. C.) 225 F. 609, 612.

The state of Pennsylvania some years ago enacted a law making it the duty of each private corporation incorporated under the laws of that commonwealth, or doing business in that state, although incorporated in another, to collect a tax due from its bondholders by retaining it from the interest paid on its bonds, and to pay the same to the state treasurer.

In the Wyoming Valley Ice Co. Case the court, passing on the above statute, said: "* * * * It appears that while, as between the state and the resident bondholders, the obligation is a tax, for which the latter is primarily and directly liable; as to the corporation, it is not such, but only a liability, due to the duty imposed by the Statute to aid in its collection. The corporation becomes a debtor for the amount of the tax. * * * *"

And commenting on section 64a of the Bankruptcy Act (Comp. St. § 9648), providing that the trustee of the bankrupt shall pay "all taxes legally due and owing by the bankrupt * * * in advance of the payment of dividends to creditors," the court said: "But to justify this, the tax in plain terms must be one which is due from the bankrupt, and not, as here, a mere liability for the collection of it from another."

And the court further said: "It is also said, however, that in the present instance the corporation has agreed in its bonds that the interest stipulated for shall be without deduction for taxes, and that these are thus made its own. But whatever may be the effect of this provision, as between the corporation and the bondholder, it does not change the character of the obligation of either of them, to the state; which is material. As to the bondholder, it is still a tax, which he is bound to pay, and which the state may enforce against him, even though the corporation has undertaken to see to its payment."

The case of In re York Silk Mfg. Co., supra, asserting the same doctrine was affirmed by the Circuit Court of Appeals in the Third Circuit in 192 F. 81, 112 C. C. A. 613, and an appeal was dismissed for want of jurisdiction by the Supreme Court in 232 U. S. 718, 34 S. Ct. 601, 58 L. Ed. 813, and certiorari was denied in 232 U. S. 724, 34 S. Ct. 602, 58 L. Ed. 815. The Circuit Court of Appeals said:

"By a statute of the state of Pennsylvania it is made the duty of the treasurer of a corporation, upon the payment of interest on any bond of the corporation, if the holder be a resident of Pennsylvania, to deduct from the interest the tax imposed by the state upon such bond and pay the same into the state treasury. This is a tax against the holder of the bond, and not against the corporation. The corporation, acting through its treasurer, is charged with the duty of collecting the tax and paying it over to the state. If it fails so to do, it becomes liable to the state for the amount of the tax and the

penalty prescribed. * * * But there is nothing in the law giving to the state a preferred claim against the corporation whose treasurer has failed to collect the tax or to pay it over to the state."

So in Commonwealth v. Railroad, 186 Pa. 235, 246, 40 A. 491, 492, it is said of this statute: "The tax is not in any sense or in any degree a tax on the corporation or its property, but on the individual citizen of the state who holds the bonds. The corporation is chargeable with it only as a collector, and by reason of default in the duty to collect."

In Commonwealth v. Delaware Division Canal Co., 123 Pa. 594, 623, 16 A. 584, 590 (2 L. R. A. 798), speaking of the state statute, the court said: "The tax is not upon the corporation; it is upon the holder of the corporate bonds."

The Attorney General of the United States on March 12, 1918, gave an opinion to the Secretary of the Treasury on this question arising upon the Revenue Act of 1917, and the tax upon the transportation of property by freight. In the course of his opinion he said: "The tax levied by section 500, supra, is directly upon the freight—that is, upon the price paid for the carriage of the goods—and the burden of it falls on the consignor or consignee." 31 Op. Attys. Gen. 239, 240. If, as respects goods carried, the tax is levied not on the carrier, but on the consignor or consignee, it is equally true that as respects the person carried the tax is laid, not on the carrier, but on the person who pays for the transportation.

It being settled then that the "tax" is imposed, not on the carrier, but on the person or the thing carried, it must follow that the tax obligation is discharged when it is paid over to the agency designated by the government to receive it, which in this case is the carrier. When a tax is paid to the collector by the person against whom it has been assessed, or upon whom the pecuniary burden is imposed, the tax obligation is thereby discharged, and the obligation of the collector for the money which he has received is that of a debtor.

The obligation is that which rests upon any person who, as agent, collects or receives money due to his principal. The New Standard Dictionary defines the word "debt" as "the obligation resting upon one person to pay or perform something that is due to another." And it says: "The legal acceptation of debt is a sum of money due either by certain and express agreement, or established by a judgment of court as a debt of record."

In the case of In re Cosmopolitan Power Co., 137 F. 858, 862, 70 C. C. A. 388, 392, Circuit Judge Baker, in considering what constitutes a "tax," within the meaning of section 64a of the Bankruptcy Act, very properly said: "If the Legislature of a state gives the name 'tax' to an exaction which is not a tax, and if the courts of the state join in the misnomer, surely the bankruptcy courts are not required to disregard the substance of the thing, to the detriment of other claimants. The state courts may authoritatively expound the substance, and the federal courts will adopt such exposition; but whether the substance constitutes a tax or not is independent of the name." And see New Jersey v. Anderson, 203 U. S. 483, 491, 27 S. Ct. 137, 51 L. Ed. 284, where the court, speaking of the decision of the highest court of a state as to whether a statute did or did not constitute a "tax," said its decision would not be conclusive, within the meaning of the term "tax," as used in section 64a of the Bankruptcy Act.

It is not at all decisive that the Regulations promulgated by the Treasury Department describe the moneys which have been collected by the carrier and which are to be turned over to the government as "taxes." The Treasury may have found it convenient for its purposes so to describe them. But the rights of the parties are not concluded by the action of the department in calling something a tax which in law is not. Undoubtedly the money in the hands of the collector is tax money, in the sense that it has been derived from a tax. But the liability of the taxpayer and that of a tax collector are very different. While the one owes a tax, the other owes a debt. The name given by the Treasury Department to the moneys received by the tax collector cannot conclude the courts, for "whether the substance constitutes a tax or not is independent of the name."

A collector of taxes for a county in the state of Maryland was in default for taxes collected and not paid over. Judgments were obtained against him in a state court therefor, upon which there remained unpaid $14,300. The collector was bankrupt, and at the time execution issued the sheriff was in possession of the bankrupt's stock of goods. The bankrupt's property was sold, and the fund realized therefrom, about $8,000, was in the bankruptcy court for distribution. This fund the county commissioners claimed, asserting that their claim was entitled to priority of payment over the general creditors. The court, passing upon the question whether the

sum due from the collector was a tax "legally due and owing by the bankrupt," and so entitled to payment in advance of the payment of dividends to creditors, said:

"There are many considerations which combine to point to the conclusion that the claim of the county against the bankrupt is not 'taxes' legally due and owing by the bankrupt to the county, but is a claim for a debt arising out of the fact that the bankrupt, having been duly appointed collector of taxes for the county, failed to account for and pay over the money for which he was answerable by law and in accordance with the duties of his office." In re Waller (D. C.) 142 F. 883.

And concluding his opinion the court said: "Holding, as I do, that the taxes legally due and owing by the bankrupt to the county, which is given priority by section 64 of the Bankrupt Act, does not include the money due by him to the county for taxes which he has collected and should account for, I rule that the petition of the county commissioners of Wicomico county must be denied."

In Bent v. Hubbardston, 138 Mass. 99, which was a case of a claim by a town against the estate of an insolvent tax collector, the court said: "We concur in the plaintiff's view that the taxes collected by Warren * * * ceased to be taxes eo nomine and constituted a debt due by Warren to the town." In that case priority of payment was allowed, but the priority was allowed as a *debt*, as the Massachusetts statute relating to insolvency expressly gave priority to all *debts* due to any town.

The security of the government for the payment to it of the amount of taxes received by the collector is usually found in the official bond which he is ordinarily required to give. See Smythe v. United States, 188 U. S. 156, 23 S. Ct. 279, 47 L. Ed. 425. But the failure in a particular case, as in this, to require any bond, does not change the nature of the transaction involved.

Section 3186 of the Revised Statutes (Comp. St. § 5908), quoted at the beginning of this opinion, enacts that, "if any person liable to pay any tax neglects or refuses to pay the same after demand," the amount shall be a lien in favor of the United States from the time when the assessment list was received by the collector, except when otherwise provided. We have already decided that the tax imposed was not a tax imposed upon the Navigation Company, but upon the traveler or the shipper; and the obligation which herein rests on the Navigation Company is

8 F.(2d)—55

to pay the debt it owes to the United States, because of its collection of the taxes so imposed upon the traveler and the shipper, who used its line for transportation purposes. Section 3186 is without application to such a state of facts.

This court, in Equitable Trust Co. of New York v. Connecticut Brass & Manufacturing Corporation, 290 F. 712, had before it the question of the right of the government of the United States to priority of payment of debts due to it. It was decided in that case that the right to priority was purely statutory. The cases were reviewed at some length, and it was said:

"We think the decisions of the Supreme Court, extending over a period of more than 100 years, have clearly established the law that the right of the United States to priority of payment is statutory, and does not apply while the debtor continues the owner of the property, even though he is unable to pay his debts. No evidence can be received of the insolvency of a living debtor until he has been divested of his property by making a voluntary assignment thereof, or has committed an act of bankruptcy, or his effects have been attached by process of law on the ground that he is an absconding, concealed, or absent debtor. Section 3466 makes a distinction between living and deceased debtors. In the case of a deceased debtor the section expressly provides that the United States shall have priority if the estate in the hands of the executor or administrator 'is insufficient to pay all the debts due to the United States.' In the case of a living debtor the language is quite different, and the construction which we have given to the section, as applicable to a living debtor, is one which has been given to it ever since its enactment."

We adhered to the doctrine announced in the above case in the subsequent case of Liberty Mutual Insurance Co. v. Johnson Shipyards Corporation, 6 F.(2d) 752, decided at the present term. And the doctrine above announced was applied in Strain v. United States Fidelity & Guaranty Co. (C. C. A.) 292 F. 694, 697, 698, 699.

[2, 3] Section 3466 (Comp. St. § 6372), also hereinbefore set forth, provides that whenever any person indebted to the United States is insolvent the *debts* due to the United States shall be first satisfied. The meaning of this provision has been settled by repeated decisions of the courts. A person to be insolvent within the meaning of the section quoted must be not simply unable to pay his debts, but that inability must be manifested in one of the three ways pointed out in the explanatory

clause of the section. It must appear (1) that the insolvent debtor has made a voluntary assignment; or (2) that the effects of an absconding, concealed, or absent debtor have been attached; or (3) that an act of bankruptcy has been committed. Conard v. Atlantic Insurance Co., 1 Pet. 386, 438, 7 L. Ed. 189; United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L. Ed. 308; Field v. United States, 9 Pet. 182, 201, 9 L. Ed. 94; Brent v. Bank of Washington, 10 Pet. 596, 10 L. Ed. 547; United States v. Oklahoma, 261 U. S. 253, 259, 260, 261, 262, 43 S. Ct. 295, 67 L. Ed. 638.

It is evident that there is nothing in the facts of the instant case which brings it within the first and second of the conditions above specified. The Navigation Company has not made a voluntary assignment, has not absconded, neither is it concealed or absent. Has it committed an act of bankruptcy? Subdivision a(4) of section 3 of the Bankruptcy Act of 1898 was amended in 1903, and an act of bankruptcy was enlarged, so as to include the act of one who, "being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States." 32 Stat. pt. 1, c. 487, p. 797 (Comp. St. § 9587).

It is to be observed that this amendment makes it an act of bankruptcy for one who is *insolvent* to apply for the appointment of a receiver or trustee over his property. The meaning of the term "insolvent" in the Bankruptcy Act is expressly defined in section 1, cl. 15 (Comp. St. § 9585). It declares that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

So far as this record is concerned, it does not disclose that the Navigation Company was "insolvent," within the meaning of the Bankruptcy Act, at the time the receivers were appointed or at any time thereafter; and the receivers were not appointed in a court of bankruptcy, but in a court of equity. The bill of complaint asking for their appointment stated on information and belief that the company's assets aggregated upwards of $7,500,000, and that its liabilities did not aggregate more than $4,200,000. It then stated that, owing to the extraordinary financial conditions then existing in the money market of the United States, it could not "presently convert its assets" to secure the funds necessary to meet its maturing obligations and those necessary for the prosecution and conduct of its business. And the Navigation Company in its answer admitted the allegations contained in the bill, joined in the prayer of the bill, and consented to the appointment of the receivers. If the record disclosed that the corporation was actually "insolvent," within the meaning of the Bankruptcy Act, and that the Navigation Company had applied on that ground for the appointment of the receivers, or that the application for the appointment was in fact procured by the corporation and in its behalf, even though the suit was not brought in its own name, it might be held to have committed an "act of bankruptcy," within the meaning of the act. James Supply & Hardware Co. v. Dayton Coal & Iron Co., 223 F. 991, 139 C. C. A. 367.

But the record does not disclose such a state of facts. Instead it discloses assets of almost $3,000,000 in excess of liabilities, but that the company was nevertheless embarrassed in meeting all of its obligations as they matured, and on that account and because of the unusual conditions of the money market at the time consented to the appointment of the receivers. We do not think that in doing so the company committed an "act of bankruptcy," within the meaning of the statute. By just such proceedings bankruptcy is often avoided and financial embarrassments are overcome.

[4] But before concluding this opinion it remains for us to consider the claim advanced by the United States that it is entitled to recover certain penalties and interest. In its proof of claim it asserts that there has become due and is owing "a penalty of 5 per cent. on said $177,030.33, amounting to $8,851.44, and a further sum of 1 per cent. interest on said $177,030.33 for each full month until paid. * * *" This claim covered certain months in 1918, 1919, 1920, and 1921. A second proof of another claim was filed, which merely covered the month of October, 1918. It claimed the principal sum of $3,979.81 as having been collected by the Navigation Company from the traveling and shipping public during the month named, together with the penalty of 5 per cent. and 1 per cent. interest as hereabove stated. The District Judge, in his order of August 4, 1924, which is the order appealed from, allowed the claim of $177,030.33 and that of $3,979.81 as general claims against the estate

in receivership, but without preference or priority of any kind, and disallowed all claims to penalties.

It is true that section 502 of the Revenue Act provides that, "if the tax is not paid when due, there shall be added as part of the tax a penalty of 5 per centum, together with interest at the rate of 1 per centum for each full month, from the time when the tax became due." As we have seen in the case of transportation taxes the "tax" is imposed on the traveler and the shipper, and is paid at the time payment for transportation is made to the carrier, who is merely a collector of the tax, and whose liability therefor is merely that of a debtor. We fail, therefore, to see that the language above quoted from section 502 has any application to the facts in this case; the amount due from the carrier not being a "tax," but a "debt."

Counsel has called our attention to the decision of the Supreme Court in the recent case of United States v. Childs, 266 U. S. 304, 45 S. Ct. 110, 69 L. Ed. 299. We are unable to see the applicability of that case to the one now before the court. That involved a claim against a trustee in bankruptcy to recover an additional income tax due from the bankrupt. The amount claimed was a tax. Here the amount claimed is not a tax, but a debt. This is a proceeding in an equity receivership, and not under the Bankruptcy Act. If it were under the latter act, the United States would clearly be unable to recover the penalty of 5 per cent., which the United States is here demanding, and which that act expressly disallows. United States v. Childs, 266 U. S. 304, 308, 45 S. Ct. 110, 69 L. Ed. 299; New York v. Jersawit, 263 U. S. 493, 496, 44 S. Ct. 167, 68 L. Ed. 405.

[5] We come now to consider the question of interest. The courts of this country have been more liberal in allowing interest than have those in England. Commenting on this fact, Mr. Sedgwick in his work on Damages (volume 1 [8th Ed.] § 292), said: "The leading difference seems to grow out of a different consideration of the nature of money. The American cases look upon the interest as the necessary incident, the natural growth of the money, and therefore incline to give it with the principal, while the English courts treat it as something distinct and independent, and only to be had by virtue of some positive agreement."

Not only have the courts of the United States been more liberally disposed to grant interest than have the courts of England, but the courts of equity have refused to be bound by the somewhat strict rules applied in the common-law courts, and have allowed it in cases where it would not be recoverable at law. And in Pease v. Barber, 3 Caines (N. Y.) 266, James Kent, then sitting as Chief Justice of the Supreme Court of New York (1805) in a common-law action for money had and received after declaring that it was an equitable action, and the party must show that he has equity and conscience on his side, said: "The rule in equity is to allow interest in many cases for money had and received. * * * Each case will depend upon the justice and equity arising out of its peculiar circumstances, to be disclosed at the trial."

[6] The established doctrine of the federal courts as to interest is that the right to it is not dependent upon statute in those cases where, in accordance with the principles of equity and justice in the enforcement of an obligation, interest should be allowed. In Young v. Godbe, 15 Wall. 562, 565 (21 L. Ed. 250) the rule was laid down that, "if there is no statute on the subject, interest will be allowed by way of damages for unreasonably withholding payment of an overdue account. The rate must be reasonable, and conform to the custom which obtains in the community in dealings of this character." And in Billings v. United States, 232 U. S. 261, 286, 287, 288, 34 S. Ct. 421, 426 (58 L. Ed. 596), the cases were reviewed and the doctrine was reasserted. In that case Chief Justice White said that in the courts of the United States, as distinguished from those of the states, the rule is "interest in all cases where equitably due unless forbidden by statute." He went on to say, speaking for the court:

"From this review it results that the doctrine as to nonliability to pay interest for taxes which have become due, which prevails in the state courts, is absolutely in conflict with the doctrine applied to the same subject in this court, and cannot now be made the rule without repudiating settled principles which have been here applied for many years in various aspects, and without in effect disregarding the sanction either expressly or impliedly given by Congress to such rules. * * * Under this condition we can see no ground for departing from the rule which the cases enforced, and we are therefore constrained to the conclusion that the court below was wrong in rejecting the prayer of the government for interest, and its action in that respect must be reversed, while in others it must be affirmed."

The courts of equity allow or withhold interest as under the circumstances of the

case seems to them equitable and just. But ordinarily equity follows the law. In an action at law against the taxpayer, the United States would be entitled to interest, although the statute was silent upon the subject; and if, in an action at law, a delinquent taxpayer, in the absence of a statute, is liable for interest, it seems to us that in a court of equity a collector of taxes, who has failed to pay over to the United States tax moneys which he has collected, should, on equitable grounds and irrespective of statute, be equally liable to pay interest to the government from the time of his unlawful withholding.

The rule as to interest in equity receivership cases was stated by the Supreme Court in American Iron & Steel Manufacturing Co. v. Seaboard Air Line Railway, 233 U. S. 261, 34 S. Ct. 502, 58 L. Ed. 949. In that case the Circuit Court of Appeals for the Fourth Circuit certified to the court the question whether interest on a certain claim was recoverable during the period of an equity receivership, and upon the facts stated in that case the question certified was answered in the affirmative. In the course of its opinion the court said:

"And it is true, as held in Tredegar Co. v. Seaboard Ry., 183 F. 289, 290 [105 C. C. A. 501], that as a general rule, after property of an insolvent is in custodia legis, interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. * * * In case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership; and if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid. Even in bankruptcy, and in the face of the argument that the debtor's liability on the debt and its incidents terminated at the date of adjudication, and as a fixed liability was transferred to the fund, it has been held, in the rare instances where the assets ultimately proved sufficient for the purpose, that creditors were entitled to interest accruing after adjudication. 2 Blackstone's Comm. 488. Cf. Johnson v. Norris, 190 F. 459, 460(5), 111 C. C. A. 291, L. R. A. 1915B, 884. The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full, but principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full. Central Co. v. Condon, 67 F. 84 [14 C. C. A. 314]; Richmond etc., Co. v. Richmond R. Co., 68 F. 105, 116 [15 C. C. A. 289, 34 L. R. A. 625]; First National Bank v. Ewing, 103 F. 168, 190 [43 C. C. A. 150]."

In the instant case the property is in custodia legis, but the claim of the United States did not thereby lose whatever interest-bearing quality it otherwise possessed. If the estate is sufficient to discharge all claims in full and to pay interest thereon, the interest should be paid on the claims of the United States, in accordance with the rule stated in the Seaboard Air Line Railway Case. But this record does not disclose whether the condition of the estate permits the payment of interest.

The receiver, in the petition asking the instructions of the District Court, stated that he has "cash on hand sufficient to make payment of this claim." But the claim, as presented, is for principal and interest. The court has allowed the claim as to principal as a general claim, but denied it as to interest and penalties. For reasons already stated, we think the court committed no error in refusing payment of the penalties, and in directing payment of the claim as a general claim without priority. So much of the decree as so provides is affirmed, and the court below is directed to modify the decree, so as to provide for the payment of interest, if the condition of the estate is such as to justify the payment of interest, within the rule stated in the Seaboard Air Line Case, supra.

At the conference on this case, after the argument, Judge HAND voted to affirm. He did not see the opinion as finally prepared and filed, not being present when the filing was directed.