### In re VAN CAMP PRODUCTS CO.

### SHUBRICK et al. v. VAN CAMP PRODUCTS CO.

Nos. 6420, 6447.

Circuit Court of Appeals, Seventh Circuit.

Feb. 28, 1938.

---

Clair McTurnan, and William R. Higgins, both of Indianapolis, Ind., and Denver C. Harlan, of Richmond, Ind., and Arthur H. Sapp, of Huntington, Ind., for appellants.

Eugene C. Miller, George E. Palmer, James W. Noel, Robert D. Armstrong, R. Niven Stall, Paul Y. Davis, and Kurt F. Pantzer, all of Indianapolis, Ind., for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

These appeals are from an order of the District Court which approved the finding and order of a referee in bankruptcy, which authorized the settlement of claims in favor of and against the estate of bankrupt.

Appellants are a sizable number of holders of a substantial amount of first and second preferred stock of the Van Camp Products Company, an Indiana corporation, which, upon its petition, was adjudged a bankrupt in December, 1932, following a short state court receivership.

Bankrupt was the financial supporter and selling subsidiary of a group of corporations known as the Van Camps. The Van Camp Milk Company, referred to as the Milk Company, is an Indiana corporation, organized in 1928 to take over the milk department of the Van Camp Packing Company, the parent company of the Van Camp group. The Milk Company was in receivership for about four years (1932 to 1936). It is now solvent and its business conducted at a profit.

John P. Frenzel, Jr., is the trustee of the bankrupt, the Van Camp Products Company.

The Milk Company asserts one claim against the bankrupt for $155,926, and this claim was one of those included in the compromise. It also claimed or attempted to assert another contractual claim aggregating some $504,000 against the bankrupt. This claim was never filed against the bankrupt estate, but it is included in the settlement. Appellants argue the bankrupt has a claim against the Milk Company and the Packing Company greatly in excess of the Milk Company's claims against bankrupt.

The bankrupt is now reported to be solvent save for the claims of the Milk Company.

The court released $300,000 in cash, and after such release the trustee still has funds on hand sufficient to pay all the expenses of administration of said estate. This sum of $300,000, if the settlement here under consideration be approved, will be promptly paid to the contending parties.

The opposing parties are two groups of preferred stockholders who entertain radically different views respecting the proposed compromise. One group, representing about 3100 shares (par value of $100 each) of first preferred stock, assert that the settlement is inequitable and highly prejudicial to their interests; that instead of allowing the Milk Company any claim whatsoever against the bankrupt's estate, there should be a substantial judgment against the Milk Company; that a large sum will be realized, if litigation be carried to the end, sufficient to pay the preferred stockholders in full or nearly so.

Another group of preferred stockholders, whose claims aggregate approximately 6,000 shares, favor the compromise of all claims as approved by the referee.

The proposed compromise was twice heard and considered by the referee in bankruptcy. An order was finally entered authorizing the settlement of all claims by the terms of which the Milk Company is to receive $120,000.

The referee's order was reviewed by the District Court with the result that the findings of fact were accepted and an order of confirmation was entered. This appeal followed.

We are confronted by a most complicated factual situation, but a rather simple legal question. Should we, upon the showing made, set aside the order which settled sharply controverted issues of fact and law that grew out of the operation of affiliated and owned subsidiary companies, which operated and are still operating on a large and somewhat successful scale?

Much of the financing of the Van Camp group was unconscionable. Interlocking directorates, in disregard of their legal and moral rights so to do, executed contracts between parent and subsidiary companies or between two subsidiary companies with the same officers or agents representing both parties. Contract rights fixed in one such contract were ignored in another contract made by the same parties. Securities, like the preferred stock of appellants, were sold to the public and the protection given to such securities by one contract was defeated by the organization of a new subsidiary with whom a different sales contract was made without adequate protection afforded said preferred stockholders.

Notwithstanding the reckless and irresponsible financing thus disclosed, the record shows a large and successful business in food packing, which was nationwide.

A very sharp and, we assume, honest difference of opinion between holders of preferred stock of bankrupt is here presented. The preferred stockholders purchased their stock with the understanding that it was to be protected by revenues produced through the sale of the Packing Company's products. A breach of the parent company's obligation has, we think, caused counsel for appellants to overlook the unquestionable right (and we think the clear duty) of the court to settle sharply litigated questions in the interest of creditors and stockholders, although the exposure of those responsible for the unconscionable financing be not publicly made.

■ Undoubtedly, appellants were within their rights in asserting and bringing to the attention of the court, claims of the bankrupt against the Milk Company, a solvent concern, and also in opposing any claim which the Milk Company might assert against the bankrupt. It is likewise equally clear that appellants were within

their legal rights in seeking to review the order of the referee which compromised the claims on the ground that the settlement was inequitable and unfair or failed to adequately protect their rights.

On the other hand, it is equally clear that the referee in bankruptcy was not required to accept their contentions nor their fact assumptions, but was in duty bound to ascertain the merits of the Milk Company's claims as well as the provability and merit of the bankrupt's claims against the Milk Company. We have heard the earnest argument of counsel on both sides and are convinced that the case was a proper one for settlement, and we are not prepared to say its authorization was unwise.

In reaching this conclusion it is necessary, however, that we review the evidence on the several separate claims and contentions.

From our study of the evidence we are satisfied that:

(a) The Milk Company's claim up to $120,000 was clearly established.

(b) Less certain was the balance of the Milk Company's claim amounting to $35,000 which was disallowed in the settlement.

(c) Still more uncertain in amount and provability were the Milk Company's claims for $504,000 based upon the failure of the bankrupt to properly advertise the Milk Company's products in accordance with the terms of its contract. These alleged damages were uncertain, and were disputed. ·

It must be apparent at once that the failure of a selling agent to advertise as agreed ($200,000 per year) may and probably did result in damages. The amount, however, may have been inconsequential, or it may have been substantial. The same may be said of the damages arising out of an inadequate sales force.

We agree with appellants that whatever claim the Milk Company had against the bankrupt, represented by item (c), occurred before the bankrupt's adjudication and was therefore a claim against the estate of the bankrupt. As bankrupt was otherwise solvent, this objection is not particularly impressive.

As to the claim of the bankrupt against the Milk Company for $1,025,000, there is little doubt but that a large portion of it can at once be eliminated as unprovable and not a valid claim against the Milk Company.

However, a sufficient amount is left to necessitate careful study. Such a study was first made by the referee. A similar investigation was also made by a committee who represented a substantial majority of the preferred stockholders. They advised their clients that the claims of the bankrupt against the Milk Company were highly speculative and uncertain, or not provable at all. The action of two-thirds of the preferred stockholders must have influenced both the referee and the court to a certain extent. It should. For, if those who would profit by the allowance and payment of their claims had no faith in their merit and provability and did not desire the assets now ready for distribution frittered away in fruitless litigation, a court would naturally hesitate before directing the litigation to proceed to the bitter end.

Nevertheless, there are times when neither the court nor the litigants should take counsel of their fears. When the merits of the cause justify it, the fact that there is a possibility of defeat should not persuade a court to authorize a settlement. The merits of the claim must control the court's action, and the timid and the easily scared must seek cover.

Situations of this kind (where compromises should be rejected) occasionally arise where officers and directors of the corporation which is in receivership or in bankruptcy, have been derelict in their duties or guilty of illegally enriching themselves at the expense of the corporation and who are entrenched in office and control the board of directors and who are able to make a specious argument in favor of a compromise which would relieve them of a large part of their liability. There is present in such cases, an element not here presented, to-wit, a compromise with a wrongdoer—with a trustee untrue to his trust. Here there may have been officerial liability arising out of the breach of duty of officers occupying dual positions. But the settlement which is before us for approval does not include the compromise of any such liability. The proposed settlement deals only with the transactions of two corporations—the stockholders and

210

creditors, of each, in a sense, being innocent of any wrongdoing. The court's duty under such circumstances is to look to the contracts of the two parties and if the composing of differences be deemed "for the best interests of the estate" (Section 50, title 11 U.S.C.A.) it should authorize the settlement.

■ The merits of the case before us are not on the side of appellants. The issues are simple. X, a selling agency, agrees to advertise and employ an adequate selling force to sell Y's products, for which Y agrees to pay a given price for a unit of merchandise. Unfortunately X is unable to advance the money it has agreed to advance for the advertisement of Y's product, and its selling force is quite inadequate. It is pressed so hard to keep its head above water and avoid a court of bankruptcy that it is not able to raise money to devote $200,000 a year to advertising its customers' products or to give necessary attention to selling Y's products. Moreover, it here seeks commissions on sales of products of the Van Camp Company in which the Milk Company is not interested and for which the Milk Company is not liable. The Milk Company does not make such product, and its contract with the bankrupt does not include commissions thereon.

In short, we are not only unconvinced of the strength of appellants' claim, but persuaded that the merits of the controversies are against the appellants.

The settlement, in other words, was one which must be described as desirable and advantageous at least as far as the preferred stockholders of the bankrupt are concerned.

■ There is much judicial precedent for the action of the District Court in approving a settlement of claims against or in favor of an estate in bankruptcy.[1] Not only does the court of bankruptcy possess the power of a court of equity to settle controversies between the trustee and creditors or claimants, but there is express statutory authority which empowers the court to approve of such settlement when "for the best interests of the estate." Title 11 U.S.C.A. § 50.

The decree is affirmed.

---

[1] Drexel v. Loomis, 8 Cir., 35 F.2d 800; Pullman Couch Co. v. Eshelman, 4 Cir., 1 F.2d 885; In re Riggi Bros., Inc., 2 Cir., 42 F.2d 174; Remington on Bankruptcy, vol. 2, § 1147, Supp., p. 220; Collier on Bankruptcy, 1935 Supp., p. 359.