**In re VAN CAMP PRODUCTS CO.**

**VAN CAMP MILK CO. v. FRENZEL et al.**
No. 6970.

Circuit Court of Appeals, Seventh Circuit.
Nov. 8, 1939.

Rehearing Denied Dec. 5, 1939.

EVANS, Circuit Judge, dissenting.

————•————

Paul Y. Davis, Kurt F. Pantzer, Ernest R. Baltzell, and William G. Sparks, all of Indianapolis, Ind., for appellant.

James W. Noel, R. Niven Stall, Clair McTurnan, William R. Higgins, and Lawrence H. Hinds, all of Indianapolis, Ind., Denver C. Harlan, of Richmond, Ind., Arthur H. Sapp, of Huntington, Ind., and Joseph J. Daniels, Eugene C. Miller,

and George E. Palmer, all of Indianapolis, Ind., for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree of 'the District Court, confirming on petition for review an order of the Referee in Bankruptcy, denying to appellant interest on the sum of $120,000 paid pursuant to the order of compromise and settlement affirmed by this Court in Re Van Camp Products Co., 7 Cir., 95 F.2d 206, February 28, 1938. Subsequent to such decision and denial of certiorari by the Supreme Court, Shubrick v. Van Camp Products Co., 305 U.S. 605, 59 S.Ct. 65, 83 L.Ed. 384, the trustee filed a petition· for instructions as to the payment of interest upon the amount of such settlement; appellant filed a cross-petition demanding interest from the date of the original approval of such settlement (August 18, 1936); the principal sum was ordered paid and accepted without prejudice to the claim for interest, determination upon which was reserved; and appellant's claim for interest was thereafter denied by the referee, whose order was confirmed by the District Court in the decree from which this appeal is prosecuted. The facts were stipulated. The error relied on arises out of the failure of the District Court as a matter of law and equity to allow to appellant any interest.

. Many of the facts involved in the present controversy may be found in our opinion in Re Van Camp Products Co., supra. In view of the question presented by the present appeal, however, it seems important to relate a summary of the proceedings which preceded the compromise agreement by which appellant was to receive the sum of $120,000, without interest.

In 1933, while appellant was in receivership, its receiver filed in the bankruptcy proceeding for Van Camp Products Company, two claims, one in the amount of $138,900.98, and the other in the amount of $17,025.62. No action was had upon the former claim, but the latter was allowed pending the Trustee's petition for reconsideration and review. Other matters in dispute involved appellant's unfiled claim in the amount of $504,000 against the bankrupt, and a counter-claim of the bankrupt against appellant in the amount of $1,025,000. On May 8, 1934, appellant's receiver made an offer to the trustee to compromise all matters in dispute between the two parties in the amount of $100,000. On November 27, 1934, the referee, upon the trustee's petition, refused to approve · this offer. On June 30, 1936, upon the closing of the receivership, all claims were assigned by the receiver to appellant. At this time, all claims of appellant against the bankrupt had been disposed of except the two claims on file as heretofore described.

On June 30, 1936, appellant again submitted to the trustee an offer to compromise all claims and controversies between the trustee and appellant. It was proposed that one claim be allowed in the amount of $17,025.62, without interest, and that the other claim be allowed in the amount of $102,974.38, but without interest.

On July 1, 1936, the trustee reported the offer to the referee, describing the offer as being one for settlement "by the payment by this trustee to said Van Camp Milk Company of sums aggregating $120,-000 without interest." The trustee, in his report, referred to the offer as being similar to the one theretofore made wherein it was proposed to compromise and settle "for sums aggregating $100,000, but with interest on said sums." On July 2, 1936, Douglas C. Jillson, et al., owners of a large majority of the first preferred stock of the bankrupt, filed a petition praying that the settlement proposed in the offer of June 30, 1936, be approved. In comparing the offer of May 8, 1934, and that of June 30, 1936, it was pointed out that the former offer included interest, while the latter offer was· without interest, and for this reason, the second offer was practically the same as the first. The petition prayed· that appellant's proposal "to accept in full payment of its claims, without further interest, the sum of $120,000, be approved, and that said amount be speedily paid." On July 10, 1936, The Indianapolis Protective Committee, acting for certain preferred stockholders of the bankrupt, wrote to each of them as follows:

"The Milk Company, formerly in receivership, now ended, has again offered to compromise its claims, of the face amount of $153,926.50, plus a large amount of accrued interest for the sum of $120,-000 without interest, if paid immediately. * * *"

In each of such letters was enclosed a form of consent which reads as follows:

"I the undersigned, the owner of ...... shares of the first preferred stock of the Van Camp Products Company, hereby express my consent to and approval of the proposed settlement of the claims of the Van Camp Milk Company by allowing and paying said company the sum of $120,000.-00, without interest."

On July 13, 1936, the referee, gave a written notice of a hearing upon the offer of compromise, to all parties in interest, in which the proposal was stated to be "by the payment of said trustee in bankruptcy herein to Van Camp Milk Company of sums aggregating $120,000.00, without interest. * * *" Attention was also called to the petition filed by Douglas C. Jillson, et al., praying that the proposal of appellant "to accept in full payment of its claims, without further interest, the sum of $120,000, be approved, and that said amount be speedily paid."

At the hearing before the referee, held on July 23, 1936, more than two-thirds of the owners of preferred stock filed their written consents, in the form above set forth, to the proposed compromise, and about one-third of such preferred stockholders were opposed to its approval or acceptance. On August 18, 1936, the referee in bankruptcy entered an order approving the proposal of appellant "to accept in full payment of its claims, without further interest, the sum of $120,000." One claim was allowed in the amount of $17,-025.62, and the other in the amount of $102,974.38, (total $120,000) and all claims in excess of those amounts were disallowed. The referee's order contained the following direction:

"* * * that the Trustee in Bankruptcy herein, be, and he is, instructed to proceed to carry out and consummate said compromise and settlement herein approved, including the execution of appropriate release of the claims and demands of the Trustee and the bankrupt against said Van Camp Milk Company, final settlement of which is made a condition of said offer of compromise and settlement; * * *"

On January 20, 1937, the matter was before the District Court on a petition to review the referee's order, and an order was entered returning the proceeding to the referee because of the failure to comply with general order in Bankruptcy XXXIII, 11 U.S.C.A. following section 53, and directing the referee to enter an order granting reasonable time to the trustee in which to file his petition to compromise in accordance therewith. In this order of the court, appellant's proposal is referred to in one instance "to accept in full payment of its claims, without further interest, the sum of $120,000," and in another instance "sums aggregating $120,000, without interest." After the proceeding had been returned to the referee, the trustee, on February 25, 1937, filed his petition for a meeting of interested parties to consider the appellant's offer of June 30, 1936, in which was stated the advantages to accrue from the acceptance of appellant's offer in "the sum of $120,000, without interest," and praying for "an order approving the settlement, and authorizing the payment by the trustee to appellant of the sum of $120,000, without interest, and the execution of such settlement agreement as the referee should deem reasonable and proper." On May 1, 1937, The Indianapolis Protective Committee mailed to the owners of the preferred stock deposited with it, a letter advocating that the proposal be accepted, and stated:

"* * * The only reason why the compromise is possible is that the Milk Company wishes to avoid the long delay and heavy cost of litigation, and for that reason is willing to take a substantial reduction, If Paid Now."

On March 8, 1937, the referee mailed to interested parties, notice of the hearing to be held on April 5, 1937, in which it was stated with reference to appellant's offer of June 30, 1936:

"Summarizing said offer, it appears that the Van Camp Milk Company is to receive $120,000.00, without interest, in full settlement of all of the mutual claims and demands existing between the parties."

At the hearing on April 5, 1937, appellees, Jessie E. Shubrick, et al., owning about one-third of the bankrupt's preferred stock, filed their objection to the proposed compromise and prayed that it be not approved. Therein, it was pointed out that the proposal was substantially the same as that made in May, 1934, comparing the two proposals thus:

"* * * the present proposal being for payment of $120,000, inclusive of interest, to the Milk Company, and the proposal of May, 1934, being $100,000.00, exclusive of interest."

On May 21, 1937, the referee entered an order approving the proposed settlement with appellant and "authorizing the payment by the trustee to Van Camp Milk

Company of the sum of $120,000, without interest." It was provided in said order that the claim asserted by appellant in the sum of $17,025.62, "be, and it is allowed in full as a preferred claim, but without interest, and that all other claims asserted * * * be, and they are allowed as a general claim in the sum of $102,974.38, without interest." It was provided that all other claims asserted, alleging any indebtedness on the part of the appellant against the bankrupt, be disallowed. The order contained the same direction to the trustee as that contained in the referee's order of August 18, 1936, heretofore quoted. The District Court, upon petition to review, affirmed the referee's order of May 21, 1937. This court, upon appeal, affirmed the judgment of the District Court, (95 F.2d 206) and the Supreme Court of the United States thereafter denied a petition for a writ of certiorari.

The trustee has paid interest on all claims allowed in the bankruptcy proceeding at the rate of 6% per annum, covering the period from the date of bankruptcy to the date of payment, with certain exceptions not here material, and except the claim of appellant involved in this controversy. There are no claims pending in the bankruptcy proceeding except appellant's claim for interest, and all claims allowed have been paid in full.

At the time of appellant's first offer of compromise, May 8, 1934, and at all subsequent times, the trustee had on hand cash more than sufficient to pay the amount of the settlement as proposed.

In the former appeal to this court (95 F.2d 206), wherein the order approving the proposed offer of compromise was under attack, appellant was an appellee, and was a respondent to the petition for writ of certiorari herein mentioned. In its brief, in opposition to the petition for such writ, appellant made the following statement:

"This case relates to an offer to compromise all claims pending between the Trustee in Bankruptcy of the Van Camp Products Company (hereinafter referred to as the 'Bankrupt') and Van Camp Milk Company (hereinafter referred to as the 'Milk Company') by payment on the part of the Bankrupt to the Milk Company of $120,000.00, without interest, and the execution of mutual releases."

On November 18, 1938, appellant was paid the sum of $120,000 by the trustee without prejudice to its claim for interest, and in connection with such payment, executed an instrument of mutual release.

The parties are in agreement that the contested issues are whether appellant is entitled to interest at the rate of 6% per annum upon the sum of $120,000 to the date as of which it was paid, November 18, 1938, and, if appellant is entitled to such interest, whether it is payable from August 18, 1936, the date on which the referee first approved the settlement, allowed appellant's claims in the sum of $120,000, without interest, and ordered consummation, or from May 21, 1937, the date on which the referee again approved the settlement, allowed appellant's claims in the sum of $120,000, without interest and ordered consummation.

The mere statement of the contested issues readily discloses that this controversy revolves entirely around the construction and effect to be given to the language employed by appellant in its offer of compromise submitted to the trustee in bankruptcy on June 30, 1936. Therein, it is proposed to compromise all claims and controversies between the trustee on the one hand, and appellant on the other, by the following arrangement: (1) "Allowance of the claims asserted * * * in the net sum of $17,025.62, filed herein on May 29, 1933, in full as a preferred claim, but without interest"; (2) "Allowance of all other claims asserted by * * * petitions filed by the undersigned in this cause as a general claim in the sum of $102,974.38, but without interest." The claims thus asserted were allowed by the Referee in Bankruptcy both in his orders of August 18, 1936, and May 21, 1937, precisely in the language of the proposal, that is, the former "allowed in full as a preferred claim without interest" and the latter "allowed as a general claim, without interest." The language in controversy may be further narrowed to the words "without interest." This appeal must be decided upon the legal effect had upon the compromise settlement by the use of those two words.

The essential argument of the appellant, as we understand it, is to the effect that the words "without interest" were limited to accrued interest at the time the compromise proposal was made and that, even if they be construed otherwise, the proposal was merged in the order or decree allowing the claims as proposed, and that, therefore, the

claims would bear interest from the time of such decree or order. This latter contention is predicated upon the theory that when the claims were allowed by the referee, they had the effect of a judgment and were immediately due and payable to appellant. Further, that the appellant, without fault on his part, has been deprived of the use of his money from the time the claims were thus allowed and is,, therefore, as an equitable matter, entitled to interest. On the other hand, it is argued by appellees that the words "without interest" must be construed as applicable to interest subsequent to the time the claims were allowed, and that appellant is thereby precluded from the recovery of interest; that neither the proposal of compromise nor the order of the referee allowing said claims, as proposed, fixed any time for their payment; and that pending the determination of the attack made upon the referee's order allowing the claims, the trustee would have jeopardized himself in paying them.

Many authorities are cited and quoted from in the briefs of the respective parties, a study of which convinces us they afford little assistance in deciding the question before us. This is true for the reason that we are here confronted with the construction to be placed upon two words, while in none of the cases cited was the court dealing with a similar situation. In other words, we have here what amounts to a contract, an offer of compromise and its acceptance, and necessarily we are limited to what was meant and intended by the parties in the use of the words in question.

Appellant relies upon a line of authorities that a bankruptcy court is governed by the principles and rules of equity jurisprudence, except as statutes may conflict, including the principles and rules of equity applicable in determining the right to interest. Thus, it has been held that in equity, interest is payable at the legal rate for withholding the use of money, (Nolte v. Hudson Nav. Co., 2 Cir., 8 F.2d 859, 867) and that a non-interest bearing trust claim during the pendency of a receivership proceeding bears interest. Ticonic Bank v. Sprague, 303 U.S. 406, 58 S.Ct. 612, 82 L. Ed. 926. We do not see, however, how such authorities have any bearing upon the instant situation, for here we must look to and be guided by the express terms of the compromise settlement.

Appellant also invokes the doctrine of merger—that is, that the offer of compromise was merged in the referee's order allowing the claims as proposed, and that, therefore, irrespective of the interpretation to be given the words "without interest," the claims bore interest from the time of their allowance. One of the principal cases cited and quoted from in· support of this argument is that of Agency of Canadian Car & F. Co. v. American Can Co., 2 Cir., 258 F. 363, 6 A.L.R. 1182. There the court was dealing with a contract which required the payment of a sum of money with interest at the rate of 2% per annum "to the date of payment." The court held that the rate of 2% continued until the date of the decree and 6% interest subsequent thereto. The court, 258 F. at page 374, said: "We find no reason and no authority for saying that equity will not follow the law in giving effect to the agreement of the parties as to the rate of interest with which the defendant was to be charged 'to date of payment.'" All we can get from this case is that the court held the parties to their contract prior to the entry of the decree, and that the contract being merged in the decree, bore the allowable rate of interest thereafter. The principle announced in this and similar cases may be illustrated thus: A owes B $1000 on a promissory note without interest, due one year after date. At the end of the year A reduces the note to judgment. It seems plain, under the authorities, that the note having become merged in the judgment, the latter would bear the allowable interest rate. Other authorities upon which appellant relies, as applied to this illustration, hold that the note "without interest" would bear interest after its date of maturity.

No good purpose, however, can be served in analyzing these various authorities, because here we have an express agreement, and the only controversy is as to its meaning. Appellant's argument, that its compromise proposal, "without interest," was merged in the referee's order allowing the claims, seems not tenable for the reason that the claims, as allowed by the referee, were also "without interest." The referee, in accepting the proposal, as made, and allowing the claims as proposed, followed the language of the proposal insofar as the matter of interest was concerned. We think, therefore, that the words in the referee's order with reference to interest, must be given the same effect and have placed upon them the same restriction as when used by appellant in its proposal. In thus concluding, we are not overlooking

appellant's asserted distinction between the referee's order allowing the claims "without interest" and the referee's order directing the trustee to make payment of such claims without including, after the word "payment," the words "without interest." It is our conclusion that the referee's directions to pay the claims, carried with them the direction, implied at least, to do so "without interest." In other words, it would seem to follow that a claim allowed "without interest" could only be paid by the trustee "without interest," whether that limitation was expressly placed upon the trustee or not.

We now go back to what was intended by appellant's offer of compromise and the allowance of its claims by the referee. It seems apparent that the words "without interest" used by the referee in the allowance of the claims, must be construed and given the same effect as those words are construed and given effect in appellant's proposal. When appellant submitted its offer, it was aware that the bankrupt estate was solvent and that interest would be paid on general claims; it is charged with knowledge that under the law, interest on such claims would be paid from the time of the filing of the petition of bankruptcy to the time of their payment. With this information and knowledge, appellant proposed to compromise its claims by their allowance in an amount of $120,-000, "without interest.". It is difficult to place an interpretation upon the proposal other than that the interest referred to contemplated future, rather than accrued, interest. It would seem reasonably certain that this is what the referee understood when the claims were allowed "without interest."

We have given a rather full statement of the various steps had in this litigation, and we shall not repeat. It is sufficient to state generally that in every petition and order filed in the proceeding subsequent to appellant's offer, the amount for which it was proposed to settle and compromise was referred to "without interest." It is true, there are some circumstances in the proceedings indicating to the contrary, but in no instance did these originate with, or come from, the appellant. These circumstances, such as they are, arise from language used by others than appellant, and even these furnish meager support to appellant's theory. We are not impressed with appellant's argument that the words "without interest" had reference to accrued interest. To give such effect to the words is to make them meaningless. A proposal to compromise for $120,000, omitting any reference to interest, undoubtedly would have accomplished the same purpose. That would have been an offer to compromise all amounts due and owing appellant, principal and interest, as well. Assume for a moment the reverse of the situation—that is, that appellant had proposed to compromise for $120,000, with interest. Would anyone contend then that such proposal had reference to other than future interest? It may be that appellant expected the payment of its proposed claims shortly after they were allowed and that, therefore, the matter of interest was not of great importance at the time its proposal was made, although it is difficult to think thus in view of the prospect for future litigation and the known hostility of a considerable number of the interested stockholders.

Another circumstance against appellant, perhaps not of great importance, but entitled to some weight, is that the question here presented apparently was not raised until after the order of the referee, approving appellant's proposal, was affirmed by this court and certiorari had been denied by the Supreme Court. It may be said, of course, that there had been no occasion to raise the question previously, although we think it is a fair inference that all of the interested parties, and especially appellant and the trustee, understood that appellant's claims, when allowed, were not to bear interest. That appellant so treated its compromise proposal finds support in the brief submitted by it to the Supreme Court in opposition to the petition for writ of certiorari where it stated, "by payment on the part of the bankrupt to the Milk Company of $120,000, without interest and the execution of mutual releases." By that language, it seems to us appellant then recognized that it was entitled only to the principal amount of its claims.

The argument advanced by appellant that, irrespective of the interpretation of the language used in its proposal, it is entitled to interest because the claims, as allowed, were immediately due and payable, is likewise not tenable. There is no provision in the proposal or in the referee's order making the claims payable immediately or at any certain time. If such a situation had been intended, appropriate language might readily have been employed. For instance, it could have inserted

the words "provided the claims were paid immediately, or within six months, or at any fixed time."

Neither do we think there is any advantage to appellant from the fact that it was not responsible for the delay in payment. The same may be said of the trustee in bankruptcy, and some two-thirds of the preferred stockholders who were urging the acceptance of appellant's proposal. Appellant, the trustee, and these stockholders, appellees in the former appeal to this court, urged that the referee's order be sustained. If there was fault, it lay with the appellants in the former appeal, but even they, as we there found, were within their rights in contesting the order. Nor do we think the trustee was at fault in. not immediately paying appellant's claims, as it is now argued he should have done. Appellant took no action in court to require such payment and, under the circumstances, we doubt if any court would have so ordered, in view of the pending litigation.

We conclude, therefore, that the order of the District Court, confirming the order of the referee, denying interest on appellant's claims was proper. It is therefore,

Affirmed.

EVANS, Circuit Judge (dissenting).

The facts are fairly and fully stated in the majority opinion.

Parties who are in disagreement as to the liability of one to the other compromise the disputed claim or claims. A compromise presupposes a reduction in the original claim. Had suit been carried to a successful end, the debtor would, or might have also been liable for a substantial amount of interest. However, in settlement, the parties agree on the payment of a sum, to-wit, "$120,000 without interest." Approval of settlement by the court was necessary.

After such approval and from the date of such approval, was claimant entitled to recover interest?

I feel tolerably clear that it was,—so clear, in fact, as to afford justification for this dissent.

It seems certain that the parties agreed and intended that claimant's disputed demands should be settled for a lump sum, to-wit, "$120,000 · without interest." In other words, any larger sum, *as well as interest* thereon from the date of the breach of duty by corporate officers, was surrendered or waived by the compromise.

After this settlement was approved by the court, could it be said that the parties agreed that failure or postponement of payment of the amount agreed upon should be without interest? If so, on what theory? If the debtor, after making the compromise, had refused to make any payment, would recovery in an action at law to collect the amount agreed upon, be without interest?

The settlement dealt with the amount of liability. Accountability for interest, as such, depended upon the due date of payment. The words "without interest" in the settlement agreement in question, relate solely to the *amount* of the settlement. The *due date* of the settlement was determined by the court's order of approval. The agreement of the parties, determinative of the *amount* of settlement, had no bearing on, and did not control, the *due date* of the payment, which in turn was determinative of the commencement of interest liability.

I therefore conclude that interest at the Indiana legal rate was recoverable from the date the District Court approved the settlement.