TIMBERS, Circuit Judge.
 

 This appeal arises from an unusual factual scenario in which the bankruptcy court approved a Trustee’s application to permit counsel for a group of unsecured trade creditors to litigate as Special Counsel to the Trustee certain of the estate’s claims. After the bankruptcy court subsequently approved an application to compromise the estate’s claims, the Special Counsel (appellant on the instant appeal) appealed to the district court from the order of the bankruptcy court approving the compromise application. Without reaching the merits of the Special Counsel’s appeal, the district court dismissed the appeal for lack of standing on the part of the Special Counsel.
 

 We find that the record is unclear with respect to the scope of the Special Counsel’s authority. We therefore vacate the order appealed from and remand the case to the district court with instructions in turn to remand the case to the bankruptcy court for clarification consistent with this opinion. We further instruct the district court in due course to rule upon the merits of the Special Counsel’s claim that
 
 *261
 
 the bankruptcy court’s approval of the compromise application was an abuse of discretion.
 

 I.
 

 Carbide Cutoff, Inc. (Carbide) is an Illinois corporation which was engaged in the manufacture and sharpening of specially designed steel cutting saws and blades. It was founded in 1975. As a result of serious financial difficulties which occurred in 1979, Carbide arranged for its principal creditor — American National Bank and Trust Company (Bank) of Rockford, Illinois — to obtain in early 1980 additional security for an outstanding loan.
 
 [1]
 
 In addition, Carbide’s President and its Chairman of the Board of Directors arranged for Alpha Sierra Corporation (Alpha Sierra), a Michigan corporation wholly owned by Carbide’s President and Chairman, to purchase Carbide’s assets in exchange for Alpha Sierra’s assumption of Carbide’s indebtedness to the Bank. On. February 27, 1980, Carbide sent a bulk sale notice to its creditors announcing the impending sale of assets to Alpha Sierra.
 

 Prior to consummation of the sale of assets, an unsecured creditor, J.M. Grimstad, Inc. (Grimstad), filed an involuntary bankruptcy petition on March 7, 1980 against Carbide.
 
 [2]
 
 Grimstad was represented by Randall E. Crocker, Esq. (Crocker), whose
 
 law firm
 
 subsequently was appointed Special Counsel to the Trustee by the bankruptcy court.
 
 [3]
 
 Grimstad initially obtained a TRO blocking the sale of assets to Alpha Sierra. The TRO expired and the transfer of assets was consummated on March 19. No interruption occurred in the operation of Carbide’s principal plant at Rockford, Illinois. After the sale of assets, the plant was operated as a subsidiary of Alpha Sierra.
 

 On April 4, the bankruptcy court entered an order adjudging Carbide insolvent. The Chapter VII proceedings continued after the bulk sale to Alpha Sierra, although the estate had been stripped of its principal assets. Craig McGuire (McGuire or Trustee) of Polo, Illinois, was appointed by the bankruptcy court as Trustee of Carbide’s estate. During the summer of 1980, McGuire conducted several Bankruptcy Rule 205 examinations. To the dismay of the general trade creditors, however, it appeared that McGuire chose not to pursue vigorously the estate’s colorable claims against the Bank and Alpha Sierra. For example, although Crocker urged McGuire to commence an action against the Bank and Alpha Sierra to set aside the preferential security interests granted to the Bank and to avoid the sale of assets to Alpha Sierra as an unauthorized post-petition transfer (a first step toward reclaiming the assets), 11 U.S.C. § 549 (Supp. II 1978), McGuire rejected Crocker’s recommendation.
 

 On August 9, McGuire did avoid the transfer to Alpha Sierra, but failed to take any further action to collect Carbide’s assets. Instead, McGuire filed an application on October 9 to compromise the estate’s claims against the Bank and Alpha Sierra. This first proposed compromise provided that the estate would receive $35,000 and that the Bank and Alpha Sierra would release any claims they had against the estate. In return, the estate agreed to re
 
 *262
 
 lease its claims against the Bank and Alpha Sierra. On November 10, McGuire petitioned to withdraw this application to compromise, after a number of unsecured creditors protested. The bankruptcy court granted McGuire’s petition to withdraw the application.
 

 Alpha Sierra then commenced an action against McGuire seeking a declaratory judgment that the sale of assets transaction was valid. According to appellant on the instant appeal, McGuire failed to inform Carbide’s trade creditors of this declaratory judgment action and filed an answer improperly admitting material allegations contained in Alpha Sierra’s complaint.
 

 Subsequently, on March 9,1981, McGuire filed a second application to compromise, proposing terms substantially similar to those in the prior application.
 
 [4]
 
 This renewed effort by the Trustee to compromise the estate’s potential claims triggered an application on March 26 by a group of twelve trade creditors represented by Crocker
 
 [5]
 
 requesting the removal of McGuire as Trustee, 11 U.S.C. § 324 (Supp. II 1978), or, alternatively, the appointment of a Special Counsel to pursue in the Trustee’s name the estate’s claims against the Bank and Alpha Sierra.
 
 [6]
 

 After a hearing before the bankruptcy court on the second compromise application, the bankruptcy court on April 13 entered an order denying the application. The bankruptcy court did not rule, however, on the trade creditors’ application to remove the Trustee. Instead, the parties stipulated that McGuire would remain as Trustee and Crocker’s law firm would act as Special Counsel to the Trustee to prosecute in the Trustee’s name the estate’s claims against the Bank and Alpha Sierra.
 

 The bankruptcy court subsequently formalized this arrangement with respect to the appointment of Crocker’s firm as Special Counsel in an order entered May 1,1981 captioned “Order Authorizing Employment of Special Counsel.”
 
 [7]
 
 According to appellant, it was agreed among the parties that Ronald R. Peterson, Esq. and his law firm would “assist” the Special Counsel, although there was no reference to Peterson or his firm in any order of the bankruptcy court.
 

 After the appointment of Crocker’s firm as Special Counsel to the Trustee, the Special Counsel actively litigated the estate’s claims on behalf of the Trustee. For example, the Special Counsel attempted to set aside the transfer to Alpha Sierra and subsequently filed a cross-claim against the Bank seeking to avoid the allegedly preferential security interests granted to the Bank. It is unclear, however, whether the
 
 *263
 
 Special Counsel was empowered to act without consulting the Trustee in litigating the estate’s claims or whether the reference in the order to “employ[ment]” should be construed in the ordinary sense of the word. In short, it is unclear whether the Special Counsel’s efforts on behalf of the estate were subject to the guidance or approval of the Trustee and whether the Special Counsel’s employment terminated when the Trustee’s work was completed. Moreover, although the May 1, 1981 order authorized the Special Counsel to litigate claims concerning Alpha Sierra, there was no similar authorization regarding claims against the Bank. The bankruptcy court nevertheless permitted the Special Counsel to challenge the validity of the security interests granted to the Bank.
 

 This confusion over the scope of the authority of the Special Counsel is critical on this appeal. The Bank and Alpha Sierra as appellees have asserted that the Trustee alone has standing and that through the compromise he has obtained all the relief that he had sought.
 
 E.g., Public Service Commission v. Brashear Freight Lines, Inc.,
 
 306 U.S. 204, 206 (1939); 9 Moore’s Federal Practice ¶ 203.06 (1982). If the Special Counsel’s authority to litigate in the name of the Trustee derives from the Trustee’s authority, then presumably the Special Counsel’s employment would terminate upon the bankruptcy court’s approval of the compromise. On the other hand, if the purpose of appointing the Special Counsel was to insulate the Special Counsel from the allegedly ineffective conduct of the Trustee, then a persuasive argument can be made for the Special Counsel’s standing to appeal from the bankruptcy court’s order, in view of the unique circumstances of this casé. These factual questions cannot be resolved on the record before us on this appeal. Rather, they must be resolved on remand by the bankruptcy court that authorized the appointment of the Special Counsel.
 

 The Special Counsel’s litigation efforts were interrupted by a motion by the Bank and Alpha Sierra for reconsideration of the Trustee’s second application to compromise. Significantly, the
 
 Trustee
 
 did not file a motion for reconsideration. Subsequently, the Bank and Alpha Sierra filed summary judgment motions and the Special Counsel cross-moved for summary judgment on the estate’s claims. At the hearing on the ap-pellees’ motion to reconsider the compromise application, the Trustee indicated that he was “neutral” and that, although he had not withdrawn his application to compromise, he left it to the bankruptcy court to determine “if it’s in the best interest of the unsecured creditors to compromise it. .. .” Thus, although the bankruptcy court previously had denied this application to compromise, appellees’ motion for reconsideration brought the Trustee’s application before the bankruptcy court once again.
 

 On August 10,1981, the bankruptcy court granted the application to compromise, despite the vigorous objections of Carbide’s unsecured creditors. Although the compromise would bring in a payment of only $37,500 to the estate, the bankruptcy court appears to have been unmoved by the plight of the unsecured creditors who would have to sustain their losses.
 
 [8]
 
 The bankruptcy court held that these creditors must expect to sustain losses because “[i]t is the nature of bankruptcy.”
 

 On appeal to the district court, that court did not reach the Special Counsel’s claim that the bankruptcy court’s approval of the compromise application was an abuse of discretion. Instead, the court dismissed the appeal for lack of standing on the part of the Special Counsel. The court held that the Special Counsel never received specific authorization from the Trustee to take the appeal. Moreover, the court distinguished cases in which unsecured creditors were granted standing to appeal by observing that the instant appeal to the district court was brought in the name of the Trustee, not in the name of an unsecured creditor. The court further held that, if the Special Counsel jointly represented an unsecured
 
 *264
 
 creditor and the Trustee, the provisions of 11 U.S.C. § 327(c) (Supp. II 1978), which prohibits such joint representation, had been violated.
 

 From the order of the district court dismissing the Special Counsel’s appeal for lack of standing, the instant appeal to this Court has been taken.
 

 II.
 

 The district court held that the facts of the instant case did not warrant an exception to the general rule in Chapter VII bankruptcy proceedings that only the Trustee has standing to appeal from a bankruptcy court order. This general rule was developed as a means to control, in an orderly manner, proceedings that often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt. Courts, however, have fashioned exceptions to this general rule when the purposes of restricting the standing requirements are not apposite. The instant case may well be such an exception, depending on the facts to be developed on the remand which we are ordering.
 

 Under section 39c of the former Bankruptcy Act, only a “person aggrieved” by a bankruptcy referee’s order was permitted to file a petition for review of that order. 11 U.S.C. § 67c. 1 Collier on Bankruptcy ¶ 3.03[6][a][i] (15th Ed.1981). The new Bankruptcy Code, however, omitted this section and does not specify the prerequisites for standing to appeal from bankruptcy court orders. Nevertheless, it has been suggested that courts should adopt the standards formerly developed under the Act. 1 Collier on Bankruptcy ¶ 3.03[6][b] (15th Ed.1981). The purpose of the “aggrieved” party requirement was to limit appeals to those parties who were directly and adversely affected by a bankruptcy court order.
 
 See generally Hartman Corp. of America v. United States,
 
 304 F.2d 429, 431 (8th Cir.1962) (“person aggrieved” must be directly and adversely affected pecuniar-ily by referee’s order);
 
 Stone v. Huffstutler,
 
 227 F.2d 217, 219 (5th Cir.1955) (persons not parties to proceedings in which order was entered have no standing to petition for review).
 

 In involuntary bankruptcy proceedings, the general rule in this Circuit is that unsecured creditors (e.g., the trade creditors in the instant case) lack standing to appeal from a bankruptcy order “unless granted leave and authority to do so in the name of the trustee.”
 
 In re Tyne,
 
 261 F.2d 249, 251 (7th Cir.1958). In that case, we stressed that in an involuntary bankruptcy proceeding it is the Trustee, not a general creditor, who generally has standing to appeal from a bankruptcy order.
 
 Id.
 
 at 251. This rule facilitates the “orderly administration of ... estate[s].”
 
 Id.
 
 We indicated that “the principle of trustee representation is .. . not always strictly applied” and we cited with approval an Eighth Circuit opinion in which an unsecured creditor was granted standing to challenge a bankruptcy court order.
 
 Id.
 
 (citing
 
 Currin v. Nourse,
 
 66 F.2d 137 (8th Cir.1933)). Nevertheless, the general rule, as followed by this and other circuits, remains that trustees are the appropriate representatives of unsecured creditors in challenging bankruptcy court orders. The Sixth Circuit has held that allowing unsecured creditors general standing to appeal from orders adverse to their interests “would be very inconvenient and lead to confusion.... ”
 
 Gochenour v. Cleveland Terminals Building,
 
 118 F.2d 89, 95 (6th Cir.1941). The Sixth Circuit also has held that, in the event that a general creditor is dissatisfied with the conduct of the trustee in not litigating a claim, his recourse is to move in the bankruptcy court for an order requiring the trustee to prosecute the claim or “permit the creditor to appeal” if the trustee declines to do so.
 
 Wells v. Dickinson,
 
 403 F.2d 635, 636 (6th Cir.1968) (unsecured creditor objected to allowance of claim of another unsecured creditor).
 

 Thus, under the foregoing procedure established to limit non-trustee standing to appeal, the proper course for Crocker in his capacity as counsel for the
 
 trade creditors
 
 would have been first to move in the bankruptcy court for an order requiring
 
 *265
 
 the Trustee to appeal from the bankruptcy court’s approval of the compromise application. Assuming arguendo that the Trustee then had appealed from the order approving the compromise application, this might not have been a vain effort, since appellees (not the Trustee) moved for reconsideration of the compromise application. The peculiar facts of this case suggest, therefore, that this may not have been a situation where a party who already had obtained relief sought to appeal from a bankruptcy court order.
 
 E.g., Public Service Commission, supra;
 
 9 Moore’s Federal Practice ¶ 203.06 (1982). In any event, the procedure applicable to unsecured creditors was not binding on appellant law firm, which was Special Counsel to the Trustee.
 
 [9]
 

 Although the Trustee was “neutral” on the compromise application, the Special Counsel clearly was opposed to it. In effect, approving the compromise application rendered moot the Special Counsel’s efforts to challenge the transactions with the Bank and Alpha Sierra. Thus, although the Trustee did not openly advocate a position that was adverse to the Special Counsel, the effect of his “neutrality” was to undermine the efforts of the Special Counsel, who had been appointed only after the Trustee had averted an effort by the trade creditors to remove the Trustee.
 

 In view of this rather peculiar sequence of events, the question remains whether the Special Counsel should have standing to appeal from the bankruptcy court’s approval of the compromise. Since the Special Counsel does not appeal as counsel to the general trade creditors, the procedural requirements of the unsecured creditor exception are not controlling here.
 
 In re Drive-In Development Corp.,
 
 871 F.2d 215, 219 (7th Cir.1966),
 
 cert. denied,
 
 387 U.S. 909 (1967);
 
 In re Columbus Brass & Aluminum Company, Inc.,
 
 283 F.2d 160, 161-62 (7th Cir.1960) (unsecured creditors have standing to object to election of trustee);
 
 In re Tyne, supra,
 
 261 F.2d at 251.
 

 It is significant, however, that courts have not always required that unsecured creditors first obtain permission of the court in order to appeal from a bankruptcy court order.
 
 Eg., In re Central Metallic Casket Co., Inc.,
 
 273 F.2d 506, 508-09 (7th Cir.1960) (appeal should not have been dismissed where permission was not obtained from district court to prosecute appeal in name of Trustee). By analogy, it is apparent that if the Special Counsel’s scope of authority was intended to be quite broad, the Special Counsel may not have been required to obtain the permission of the Trustee to appeal in the instant case. The bankruptcy court order authorizing the Special Counsel to prosecute in the Trustee’s name the estate’s claims against Alpha Sierra did not contain any express provision prohibiting the Special Counsel from appealing from an adverse order of the bankruptcy court which might affect these claims. The Special Counsel, although possibly granted
 
 *266
 
 substantial discretion by the bankruptcy court and the Trustee in the prosecution of the estate’s claims against Alpha Sierra, is now placed in the position of being stripped of authority to pursue those claims on appeal. Since such a result appears to be inconsistent with the purpose of the bankruptcy court order appointing the Special Counsel, the granting of permission to the Special Counsel to pursue the instant appeal may be appropriate — especially if the bankruptcy court intended to confer on the Special Counsel independent authority to pursue the estate’s claims against Alpha Sierra.
 

 Although the restrictive standing requirements in this area are necessary to ensure the orderly administration of Chapter VII estates,
 
 In re Tyne, supra,
 
 261 F.2d at 251, the normal procedural safeguards are inap-posite in the instant case. There appears to be no danger here that granting the Special Counsel standing to appeal will open the floodgates and result in numerous disgruntled unsecured creditors bringing similar actions challenging the bankruptcy court’s approval of the compromise application. Furthermore, it makes little sense to deny the Special Counsel standing to appeal when the bankruptcy court and the parties to the litigation previously sanctioned the role of the Special Counsel in challenging the suspect sale of assets and preferential security interests. As a practical matter, if the Special Counsel is not permitted to challenge the bankruptcy court’s decision, the Trustee most likely will not appeal. Indeed, the Trustee may not be able to appeal if it is determined that he has received all the relief he had sought from the bankruptcy court.
 
 [10]
 

 Accordingly, we vacate the order of the district court dismissing the appeal and remand the case to the district court with instructions to remand the case to the bankruptcy court for a determination of the scope of the Special Counsel’s authorization and any related matters.
 

 In due course, upon appeal from the bankruptcy court’s determination with respect to the scope of the Special Counsel’s authority, the district court should rule upon the merits of the Special Counsel’s claim that the bankruptcy court’s approval of the compromise application was an abuse of discretion. In this manner, any further appeal to this Court will bring up for review at one time all relevant matters.
 

 The mandate shall issue forthwith.
 

 No costs.
 

 Vacated and Remanded.
 

 [1]
 

 . The Bank’s loan was secured on June 6, 1978 by a first lien on all of Carbide’s tangible personal property in Illinois. After Carbide began experiencing financial difficulties, the Bank received a junior mortgage on January 11, 1980 on certain real estate. It subsequently received a security interest in Carbide’s tangible property in Texas and Pennsylvania, i.e., Carbide’s blade sharpening facilities.
 

 [2]
 

 . According to the schedules filed in the bankruptcy court, Carbide owed general trade creditors approximately $2,654,000. Grimstad’s claim was for $87,424.96.
 

 [3]
 

 .Crocker’s firm — Lichtsinn, Haensel, Bastían & Erchul — was specifically appointed Special Counsel. Note 7
 
 infra
 
 and accompanying text. Crocker was the member of the firm who represented the Trustee in the Carbide bankruptcy proceedings. It should be noted, however, that Crocker erroneously has taken this appeal in his own name, rather than in the name of the firm. To avoid confusion in this opinion over the identity of the Special Counsel, we shall refer throughout to the
 
 firm,
 
 rather than to Crocker
 
 individually,
 
 as the Special Counsel.
 

 [4]
 

 . In the second compromise application, Alpha Sierra and the Bank offered to pay the Trustee $37,500, withdraw a claim of Tischken Products, Inc. for $505,103, and release the Trustee and bankrupt from all claims. As of January 1980, Tischken was the sole shareholder of Carbide. The President and Chairman of the Board of Carbide each owned 40% of the stock of Tischken.
 

 [5]
 

 . These 12 trade creditors had an aggregate claim against the estate in excess of $240,000.
 

 [6]
 

 . In their application to remove the Trustee, these trade creditors alleged that, although McGuire on August 9, 1980 had avoided the transaction with Alpha Sierra pursuant to 11 U.S.C. § 549 (Supp. II 1978) (post-petition transfers), the Trustee had failed since then to commence an action to collect Carbide’s assets and had failed to take other actions consistent with his duties as Trustee. Eight months had elapsed since McGuire had avoided the transaction. In their objection to the Trustee’s compromise application, the creditors alleged that the 1980 security interests granted to the Bank fell within the ninety day pre-petition period during which liens granted without the extension of additional consideration are voidable preferences. The application to remove the Trustee also referred to preferential liens.
 

 [7]
 

 .This order provided in pertinent part:
 

 “It is Ordered:
 

 That, said Craig McGuire, as trustee of the estate of Carbide Cutoff, Inc., ... is hereby authorized to employ as counsel Lichtsinn, Haensel, Bastían
 
 &
 
 Erchul, s.c., ... for the purposes of commencing an action to secure the turnover of certain assets transferred by the debtor corporation on or about the 19th day of March, 1980, and for the further purpose of defending an action for declaratory judgment commenced against said Craig McGuire
 

 See note 3
 
 supra.
 

 [8]
 

 . Note 2
 
 supra.
 

 [9]
 

 . The district court raised the prospect that if Special Counsel continued to represent the unsecured creditors on appeal, such representation would violate the express terms of 11 U.S.C. § 327(c) (Supp. II 1978). Although Crocker’s firm was appointed Special Counsel, note 7
 
 supra,
 
 the district court erroneously asserted that Crocker was appointed Special Counsel. In any event, according to § 327(c), an employee of the trustee in a Chapter VII case “may not, while employed by the trustee, represent, in connection with the case, a creditor.” The purpose of this section is to prevent a professional employed by the trustee from acting with a conflict of interest. The fact that the trustee’s employee previously represented a creditor, however, does not bar current employment by the trustee.
 
 Id.; see generally
 
 Weintraub and Resnick, Bankruptcy Law Manual ¶ 6.10[2] (1980). If a conflict does exist, the court may deny the professional’s fee request. 11 U.S.C. § 328(c) (Supp. II 1978). In the instant case, the record on appeal does not indicate whether the Special Counsel suspended its representation of the general creditors while it litigated claims on behalf of the Trustee. If it is determined on remand that the Special Counsel has been serving two masters in violation of § 327(c), it at least is clear that it should not be awarded any compensation for its prior work on behalf of the Trustee. At oral argument before us, appellant’s counsel asserted that the Special Counsel ceased representing Carbide’s unsecured creditors when it was appointed Special Counsel. This factual issue is one, among others, which should be resolved in the bankruptcy court on remand.
 

 [10]
 

 . The district court raised this possibility in a footnote. If the Special Counsel’s authority is insulated from the actions of the Trustee, however, the Special Counsel may still be able to pursue the instant appeal, even if the Trustee is not able to do so.