**In re CENTRAL ICE CREAM COMPANY, Bankrupt.**

Consolidated Appeals From Four Orders Entered on October 2, 1985 and Findings of Fact and Conclusions of Law Entered on October 9, 1985.

No. 85 C 10073.

United States District Court, N.D. Illinois, E.D.

June 9, 1986.

Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for plaintiffs.

James E. Carmel, Karen R. Goodman, Carmel, Baker & Marcus, Ltd., Chicago, Ill., Trustee of Cent. Ice Cream Co.

Theodore M. Becker, J. Samuel Tenenbaum, Becker & Tenenbaum, Chicago, Ill., for Trustee Bernard C. Chaitman.

James A. Chatz, Lord, Bissell & Brook, Arnold A. Pagniucci, Sachnoff Weaver & Rubenstein Ltd., Chicago, Ill., for defendants.

Nicholas G. Manos, Epton, Mullin & Druth, Ltd., Chicago, Ill. for Geo. Rafel & Geo. Kamberos.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This case is before the court on the Trustee's motion to dismiss the appeal of this case from the bankruptcy court. For the reasons set forth below, the Trustee's motion is granted.

The underlying bankruptcy proceeding is *In re Central Ice Cream Company,* 59 B.R. 476, which is before Judge Schmetterer. The only significant asset of Central Ice Cream Company's estate ("Central") is Central's claim for breach of contract, which centers around a contract between Central and McDonald's Corporation and McDonald's System, Inc. ("McDonald's") for the production by Central of a 3–flavor, factory filled and packaged ice cream cone for sale in McDonald's restaurants. After McDonald's ceased purchasing the ice cream cones from Central in 1974, Central filed suit against McDonald's in the Circuit Court of Cook County. The jury rendered a verdict of $52 million, which was subsequently contested in a motion for judgment notwithstanding the verdict. Shortly before the decision on the motion was announced, the parties entered into a settlement agreement which provided for McDonald's to pay $11.5 million for Central's claims and $4 million for the anticipated personal claims of Thomas Cummings ("Cummings"). Cummings, who had par-

ticipated in the circuit court trial as Central's representative, is not a party to this bankruptcy suit. This settlement agreement was subsequently amended so as to provide for a $15.5 million payment to Central and no payment to Cummings.

On June 28, 1985, Bernard Chaitman, Trustee in bankruptcy of Central ("Trustee"), presented to the bankruptcy court the Trustee's Amended Application for Approval of Compromise and Settlement and for Authorization of Payment of Attorney's Fees and Litigation Expenses ("amended application"). Notice of a hearing on the amended application was sent to creditors and other persons. Written responses to this notice were filed by each of three groups of shareholders. George S. Kamberos and George A. Rafel (the "Kamberos Group") objected to the sufficiency of the $15.5 million offer and the manner in which settlement negotiations were conducted. Thomas Cummings, Barbara Cummings, Leon Stellings and Tina Stellings (the "Cummings Group") objected to the sufficiency of the offer. Rico G. Paone, the Jann, Carroll, Kruse & Sain Investment Partnership, and Irwin Jann, Howard Carroll, Richard Kruse and Kenneth Sain (the "Paone Group") requested the bankruptcy court to accept the offer subject to certain conditions.

Before ruling on the amended application, the bankruptcy court considered testimony, pleadings, briefs and arguments by creditors, the Trustee and any other person who claimed an equitable interest in Central. The court considered the objections and arguments of all purported shareholders of Central without ruling on their claims of stock ownership or on whether they had standing in the bankruptcy case. (See Findings of Fact and Conclusions of Law order, dated October 9, 1985; "Findings and Conclusions" 1 at n.1 and 39). The bankruptcy court determined that it would be in the best interest of Central's estate to accept the settlement because all creditors would be paid in full (without interest) and Central would stand to have a surplus of $1 to $3 million.

The case is before the district court on the consolidated appeals from four orders entered on October 2, 1985 and Findings of Fact and Conclusions of Law entered on October 9, 1985. The Cummings Group, the Kamberos Group and Ben D. Cotton III ("Cotton") have appealed from the October 2, 1985 order approving settlement and the October 9, 1985 Findings and Conclusions. The Kamberos Group has appealed from the order as to attorney's fees, order for repayment of loans and order as to expenses, entered on October 2, 1985. The Paone Group has appealed from the order as to attorney's fees entered on October 2, 1985 and the Findings and Conclusions. The Trustee now moves to dismiss the appeals on the basis that the appellants have no standing to appeal.

### MOTION TO DISMISS

Central filed its Chapter XI case before October 1, 1979 when the Bankruptcy Reform Act of 1978 became effective. For this reason all proceedings in bankruptcy related to Central are governed by the Bankruptcy Act of 1898 as amended (the "Act"). *Central Trust Co., Rochester, N.Y. v. Official Creditors Comm. of Geiger Enterprises, Inc.*, 454 U.S. 354, 357, 102 S.Ct. 695, 696–97, 70 L.Ed.2d 542 (1982). Section 39(c) of the Act provides that only a "person aggrieved" by an order of the bankruptcy court is permitted to file a petition for review of that order. 11 U.S.C. § 67(c). *In re Matter of Carbide Cutoff, Inc.*, 703 F.2d 259, 264 (7th Cir.1983). The purpose of limiting appeals to only aggrieved persons was to permit only those parties who were directly and adversely affected by the bankruptcy court order to appeal. *Carbide Cutoff*, 703 F.2d at 264.

The appellants in this case are not persons aggrieved within the meaning of 11 U.S.C. § 67(c). Although the Trustee asserted that the $15.5 million offer would probably be large enough to provide Central with a surplus of $1 to $3 million, this surplus would belong to Central and not to Central's shareholders. *In re Witherbee*, 202 F. 896, 899 (1st Cir.1913). Central,

through its officers and directors, will decide whether to retain the capital or distribute it to shareholders. The shareholders themselves have no immediate right to the surplus. *Id.* Likewise, the decision whether to appeal belongs to Central. The mere fact that Central's stock might change in value as a result of the court's action is not enough to confer standing upon the shareholders. *In re Michigan-Ohio Building Corp.*, 117 F.2d 191, 193 (7th Cir.1941). The case cited by the Paone Group for the proposition that shareholders of a bankrupt corporation have standing to appeal an order of the bankrupt court, *In re Van Camp Products Co.*, 95 F.2d 206 (7th Cir. 1938), is distinguishable because it was decided before 11 U.S.C. § 67(c) was added on June 22, 1938. When *Van Camp* was decided it was not necessary for an appellant to be a "person aggrieved". Accordingly, the appellants in the case at bar have no standing to appeal because they are not "persons aggrieved" within the meaning of 11 U.S.C. § 67(c).

■ Further, the fact that the appellants were given an opportunity to be heard in the bankruptcy court does not provide a basis for standing on appeal. See, *In re F.P. Newport*, 98 F.2d 453, 455–56 (9th Cir. 1938). As the Seventh Circuit stated in *In re South State Bldg. Corp.*, 140 F.2d 363, 367 (7th Cir. 1944), "an interested party who had taken part in the proceedings and had the right to intervene, but who had not formally done so, was not capable of appealing, as such a party was not properly on the record as an intervenor, and not being a party to the record has no standing to appeal." The bankruptcy court was careful to state that the Trustee had objected to the shareholders' participation and that the court's consideration of all relevant evidence and briefs was not to be interpreted as a declaration that the shareholders had standing. Findings and Conclusions at 1, n.1. Moreover, the appellants never moved to intervene. At one point counsel for the Kamberos Group made an oral motion to intervene but was instructed by the court that such a motion could only be made in writing after proper notice. (TR. 8/8/85 at 32–33). None of the shareholders ever moved to intervene as required by Rule 24(c), Fed.R.Civ.P.

■ Even if the appellants had moved to intervene they could not meet the requirements of Rule 24(a)(2), Fed.R.Civ.P. The appellants have not shown that they have an interest related to Central's estate. An adversary proceeding is currently pending in the bankruptcy court to determine who are the rightful owners of Central's stock. Because the competing claims to Central's stock have been resolved no appellant can show that they have an interest in Central. However, as stated above, the appellants could not show that they have an interest in the bankruptcy since any surplus from the settlement belongs to Central rather than the shareholders.

■ Further, the appellants could not meet the requirements of Rule 24(a)(2) because their interests are adequately represented by Central. The appellants argue that Central and its counsel do not adequately represent the interests of the shareholders because of a conflict of interest arising from the first settlement agreement in which McDonald's offered $4 million to Cummings and $11.5 million to Central. The conflict of interest allegedly arises because the special litigation counsel was bargaining with McDonald's on behalf of both Central and Cummings. However, the first settlement agreement was withdrawn and the amended application was filed in its place. The amended application provided for a $15.5 million payment to Central and no payment to Cummings. The bankruptcy court specifically found that the amended settlement agreement was not tainted by the conflict of interest which existed in the first settlement agreement (Findings and Conclusions at 28). This court agrees. Once all of the money that McDonald's was offering was to be paid to Central the conflict of interest arising from the dual representation of both Central and Cummings became irrelevant. The conflict of interest was not alleged to have affected the total amount that Mc-

Donald's was offering to settle the case. Accordingly, the conflict of interest did not affect Central's nor Central's counsels' ability to represent the interests of the shareholders.

■ The Cummings Group argues in its response to the motion to dismiss that because Cummings devoted years of his life to representing Central in its litigation against McDonald's, he is entitled to at least a portion of any surplus resulting from the settlement. Although Cummings may have some kind of a claim against Central or its counsel, he has no right to the surplus so as to make him or the Cummings Group "persons aggrieved." As stated above, the surplus would belong to Central.

■ The Paone Group argues that it has standing to appeal because it is a creditor of Central. However, only the Trustee has standing to appeal from a bankruptcy court order on behalf of creditors' rights. *Carbide Cutoff*, 703 F.2d at 264.

■ The court also rejects the Paone Group's argument that it was deprived of notice and an opportunity to be heard. The Paone Group was given notice of the bankruptcy proceeding and was generously granted an opportunity to be heard. The Paone Group's arguments that it lacked notice of the appeal are frivolous since the Paone Group is one of the appellants. The Paone Group has no constitutional right to be heard in the district court on appeal because, as determined above, it is not a "person aggrieved" under 11 U.S.C. § 67(c) and has no standing to appeal.

Ben D. Cotton III is prohibited from appealing because he failed to file an objection to the Findings and Conclusions in the bankruptcy court, a designation of record with the appellate court or a response to the Trustee's motion to dismiss.

Accordingly, for the reasons set forth above, the Trustee's motion to dismiss appeals is granted.

IT IS SO ORDERED.